WORK BROS. & CO. v. OLIVER JACOBS & CO., ET AL.

[FILED DECEMBER 16, 1892.]

Sales: OBTAINING CREDIT BY MISSTATEMENT OF FINANCIAL CONDITION: FRAUD: RESCISSION.    Where an insolvent purchaser of goods makes representations as to his financial condition which he knows do not represent the true condition of his affairs, by reason of which a seller is induced to part with his goods on credit on the faith of such statements, the transaction is fraudulent and the seller may, upon discovering the fraud, rescind the sale and reclaim the goods.

ERROR to the district court for Cass county.    Tried below before CHAPMAN, J.

*Lamb, Ricketts & Wilson,* for plaintiffs in error.

*Wooley & Gibson,* and *E. P. Holmes, contra.*

MAXWELL, CH. J.

This is an action of replevin instituted by the plaintiffs against the defendants to recover " 137 suits of ready made clothing and 126 pairs of pantaloons, ready made, and two coats and two vests, of the value of $1,632.63,

being all the ready made clothing in the general stock of said Jacobs & Co., at Wabash, Nebraska. Plummer, Perry & Co. answer that they have a special interest in the property by virtue of a chattel mortgage. The answer of Jacobs & Co. is as follows:

"Come now the above named defendants, Oliver Jacobs, Paulina A. Horton, and Joseph Emery, partners doing business in the firm name of Oliver Jacobs & Co., and for separate answer to plaintiffs' petition deny each and every allegation, averment, and statement therein contained.

"Second—These defendants further answering allege that on and prior to about the 20th day of August, 1889, these defendants were the owners, absolutely, of the goods and chattels described in plaintiffs' petition; that on or about said date these defendants executed and delivered to the said Eli Plummer, Roscoe Perry, and John Fitzgerald, partners doing business as Plummer, Perry & Co., a chattel mortgage upon said described goods to secure *bona fide* indebtedness in the sum of $2,500.

"Third—That under and by virtue of said chattel mortgage the said defendants Plummer, Perry & Co. took possession of said goods and chattels, and so held possession at the time said goods were taken by the writ of replevin by the plaintiffs.

"Fourth—That the said defendants Plummer, Perry & Co., under and by virtue of said chattel mortgage, were seized of a special ownership in said goods and chattels, and were entitled to the possession of the same.

"Fifth—That these defendants have no title or ownership in said chattel property, unless there should be a surplus over and above the amount necessary to pay the claim of said Plummer, Perry & Co.

"Sixth—Wherefore these defendants pray that they may go hence and recover their costs, and that the possession of said property be awarded the said Plummer, Perry & Co., mortgagees as aforesaid."

The parties entered into a stipulation as to the facts as follows:

"It is hereby stipulated and agreed that this cause shall be, and the same hereby is, submitted to the above entitled court for determination on the following agreed facts:

"First—That the plaintiffs are wholesale dealers at Chicago, Illinois.

"Second—That defendants Oliver Jacobs & Co., at all times herein mentioned and up to the 19th day of August, 1889, were dealing in general merchandise at Wabash, Nebraska, under the firm name of Oliver Jacobs & Co., which firm was composed of Oliver Jacobs, Paulina A. Horton, and Joseph Emery.

"Third—That at all times herein mentioned the defendants Plummer, Perry & Co. were and still are wholesale grocers at Lincoln, Nebraska.

"Fourth—That on the 11th day of March, 1889, the defendant Oliver Jacobs & Co., through Oliver Jacobs, for the purpose of obtaining credit from plaintiffs, and for the purpose of buying goods from them on credit, made to plaintiffs a statement of the resources and liabilities of said firm, and the individual members thereof, which statement was as follows:

RESOURCES AND LIABILITIES OF THE FIRM OF OLIVER JACOBS & CO.

*Resources.*

| | | |
|---|---:|---:|
| Three hundred acres of land adjoining the town of Wabash | $13,500 | 00 |
| Four town lots | 400 | 00 |
| Live stock | 1,400 | 00 |
| Grain | 300 | 00 |
| Outstanding accounts | 4,000 | 00 |
| Insurance due on loss | 5,000 | 00 |
| | $24,600 | 00 |

*Liabilities.*

Real estate mortgage on above 300
    acres of land..........................$5,000 00
Total other indebtedness .............. 4,000 00
                                                    ——————— $9,000 00

Net worth ............................................ $15,600 00

Individual property of Oliver Jacobs:
    Real estate...................................... $1,500 00
Individual property of Mrs. P. A. Horton:
    160 acres of land near Elm-
        wood............................$4,800 00
    Bills receivable................... 3,000 00
                                                    ——————— $7,800 00
    Liabilities:
        Real estate mortgage on above farm ...... 2,300 00

        Net worth ...................................... $5,500 00
Individual property of Joseph Emery:
    Real estate, Page county, Iowa.............. $7,200 00
    Live stock ...................................... 2,100 00
    Grain........................................... 300 00

Which statement was made to all creditors and including
Plummer, Perry & Co.

"Fourth—That at the time of making the above state-
ment the said firm of Oliver Jacobs & Co. in truth and in
fact owned no part of said 300 acres of land mentioned in
the above statement, save by the contract attached hereto,
marked Exhibit B, no part of the consideration therein
mentioned having been paid, but they had given their
notes for the same, which notes Horton now holds; that
there was due on loss covered by insurance only $4,250,
instead of $5,000, and that said firm was indebted on un-
secured claims $9,132.10, instead of $4,000; that the in-
dividual property of Oliver Jacobs was at that time mort-
gaged in the sum of $200 instead of unincumbered; that
at that time the 160 acres owned by Mrs. P. A. Horton,

near Elmwood, listed above, was incumbered $2,475 instead of $2,300, as stated in said statement.

"Fifth—That Oliver Jacobs knew all the facts when he made said above mentioned statement.

"Sixth—That plaintiff, relying on the truth and correctness of said statement so made to them by said Jacobs & Co., and believing the same to be correct and true, sold and shipped to said Jacobs & Co. the goods herein in controversy, in the month of March, 1889.

"Seventh—That said Jacobs & Co. have never paid for the goods in controversy or any part thereof.

"Eighth—That on the 19th day of August, 1889, and while said Oliver Jacobs & Co. were in the possession of a stock of goods at Wabash, Nebraska, including the goods in controversy, they executed and delivered in due form of law to one George Smith and Joe McKeag a chattel mortgage for the sum of $300 and $200 to secure a *bona fide* and unpaid debt, then and theretofore owing by said Jacobs & Co. to said Smith & McKeag; also a chattel mortgage for $1,500 to defendants Plummer, Perry & Co., to secure a *bona fide* and unpaid debt owing to them from said Jacobs & Co., for goods and merchandise theretofore sold and delivered by Plummer, Perry & Co. to said Oliver Jacobs & Co., and said Jacobs & Co. turned possession of said stock of goods, including those in controversy, over to said Smith & McKeag, who held possession of the same until the 21st day of August, 1889, when said Smith & McKeag sold, assigned, and transferred the said mortgages, and all their rights thereunder, to said Plummer, Perry & Co., for a valuable consideration, by the execution and delivery to them of Exhibits A and B, hereto attached and made a part of this stipulation, and turned his possession over to them, and then said Plummer, Perry & Co. continued in possession from that time until the levy of the writ in this case; and that on the 20th day of August, 1889, said Jacobs & Co. executed to said

Plummer, Perry & Co. a chattel mortgage, in due form of law, for $2,000 to secure the debt of that amount for goods theretofore sold and delivered to Jacobs & Co. by said Plummer, Perry & Co.

"Ninth—That at the time of the. levy of the writ in this case the defendants Plummer, Perry & Co. were in possession of all the said stocks of goods, including the goods in controversy, under and by virtue of the three chattel mortgages heretofore herein mentioned, and with no other right thereto than by said mortgage conferred.

"Tenth—That said indebtedness of said Jacobs & Co. to Plummer, Perry & Co. and George Smith and Joe McKeag was *bona fide*, and was for goods theretofore sold and delivered to said Jacobs & Co. by said Plummer, Perry & Co., and Smith & McKeag was wholly unpaid.

"Eleventh—That said goods so taken under this writ in this case are now in the possession of the plaintiff and have been since levy and writ of replevin.

"Twelfth—That the value of goods in controversy in this case at the time they were taken, was $1,000.

"Thirteenth—That five cents is the amount of damages sustained by the defendants Plummer, Perry & Co. for the detention of these goods.

"Fourteenth—That plaintiffs did not know the facts above mentioned as to resources and liabilities of said Oliver Jacobs & Co. until the day before this suit was brought.

"Fifteenth—That said Plummer, Perry & Co. sold the remainder of said stock after the replevin of the goods in controversy for the sum of $1,953.22 and applied in the payment of the mortgages so held by them, and there is still due thereon $2,128.58.

"Sixteenth—That said firm of Oliver Jacobs & Co. and Oliver Jacobs, Paulina A. Horton, and Joseph Emery are, and since August 19, 1889, have been, insolvent.

"Seventeenth—That the interest of Plummer, Perry &

Co. in the goods in controversy, if any, is the amount of the unpaid balance of their claim, which is $2,128.58, as shown by the statement hereto attached and made a part of this stipulation, and marked Exhibit C."

The court below found in favor of the defendants and rendered judgment accordingly.

It will be observed that it is agreed that Jacobs & Co. were insolvent when the goods in question were purchased from the plaintiffs, and that Jacobs & Co., when purchasing the same, led the plaintiffs to believe that they were solvent and able to pay their debts, and it is clearly shown that Plummer, Perry & Co. gave no new consideration when taking the chattel mortgage. This being so, the right of the plaintiffs, the owners of the goods, is superior to theirs. This question is considered by the supreme court of Iowa in *Reid v. Cowduroy,* 44 N. W. Rep., 351, in a case very similar to this, and it was held that the seller could reclaim the goods. It is said "where goods are sold there is a promise, expressed or implied, on the part of the buyer to pay for them, and the seller has a right to rely upon the presumption that the buyer intends to perform his obligations by making payment. Therefore, if the latter entertains a secret intent not to make payment, that intent and his failure to disclose it constitute such a fraud as will entitle the seller to rescind the sale. (*Factory v. Lendrum,* 57 Ia., 581; s. c., 10 N. W. Rep., 900; *Lindauer v. Hay,* 61 Ia., 665; s. c., 17 N. W. Rep., 98; *Nichols v. Michael,* 23 N. Y., 266; *Hennequin v. Naylor,* 24 N. Y., 140; *Dow v. Sanborn,* 3 Allen [Mass.], 182; *Belding v. Frankland,* 8 Lea [Tenn.], 67; see, also, *Lee v. Simmons,* 65 Wis., 526; s. c., 27 N. W. Rep., 174; *Donaldson v. Farwell,* 93 U. S., 631.) The supposed solvency of the purchaser is usually a material inducement to the sale of goods; and where it is, and the purchaser makes false and fraudulent representations in regard to it, upon which the vendor, not knowing the truth, relies in effecting the sale, it may be rescinded by

the vendor as fraudulent." This, we think, is a correct statement of the law, and was so held by this court in *Symns v. Benner*, 31 Neb., 593; *Tootle v. First National Bank*, 34 Id., 863, and is the general rule. (*Redpath v. Brown*, 39 N. W. Rep. [Mich., 1888], 51; *McGraw v. Henry*, 47 Id. [Mich., 1890], 345; *Edson v. Hudson*, Id. [Mich., 1890], 347; *Reid v. Cowduroy*, 44 Id. [Ia., 1890], 352; *People's Savings Bank v. Bates*, 120 U. S. [1887], 556; *Morse v. Godfrey*, 3 Story [C. C. U. S.], 364; *Johnson v. Peck*, 1 Wood. & Min. [C. C. U. S.], 334; *Rison v. Knapp*, 1 Dill. [C. C. U. S.], 187.) It follows that the judgment must be reversed and the cause will be remanded to the district court to render judgment in accordance with this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.