[No. 1997. Decided April 23, 1897.]

## THE WOONSOCKET RUBBER COMPANY, *Appellant*, v. LOEWENBERG BROTHERS *et al.*, *Respondents*.

SALE — RESCISSION FOR FRAUD — QUESTION OF FACT FOR JURY — RATIFICATION OF CONTRACT.

One who has been induced by fraudulent representations to sell goods to another has a right to reclaim them from persons to whom the latter has sold or transferred them for the purpose of satisfying pre-existing debts.

The question of whether or not goods have been obtained by fraudulent representations is one of fact to be determined by the jury, when it appears that, at the time plaintiff's agent was negotiating the sale of the goods to defendants, they stated to him that they were perfectly solvent, that their real estate alone was worth double the amount of their debts, and that they had made a statement, in writing, of their assets and liabilities to a certain mercantile agency, which statement showed their financial condition, to which they directed his attention; that he examined this statement and shipped the goods on the faith of these representations; that in fact defendants were hopelessly insolvent and owed over $100,000 more than the indebtedness shown by their statement to the mercantile agency; and that defendants admit such statement was not true, but claim it was not for the purpose of obtaining credit, but to avoid being blackmailed.

Where the vendor of goods upon credit has the right to rescind the sale for fraud on the part of the vendee, the fact that the vendor's agent, without knowledge of the fraud, but aware of the financial embarrassment of the vendee, attempts to get his claim secured, will not operate as a ratification.

Appeal from Superior Court, Spokane County.—Hon. JESSE ARTHUR, Judge.   Reversed.

*Samuel R. Stern,* for appellant.

*L. B. Nash,* and *Lucius G. Nash (Dolph, Mallory & Simon,* and *John M. Gearin,* of counsel), for respondents.

The opinion of the court was delivered by

ANDERS, J.—This was an action to recover certain rubber goods which the plaintiff alleged it was induced to sell to defendants Loewenberg by fraudulent representations made by them, as to their financial condition, at the time the contract of sale was consummated.   It appears that the goods in controversy were ordered by the firm of Loewenberg Bros., who were merchants at Spokane, some time in May, 1894, and were received by them during the following month, and were to be paid for within sixty

or ninety days after the first day of October. Nothing was ever paid on account of the goods, and a portion of them was sold by Loewenberg Bros. in the ordinary course of business, and the remainder was transferred by them by bill of sale to defendant Glover, as trustee, for the purpose of paying certain debts of the firm which were contracted long before these goods were purchased. This bill of sale, together with a deed which was executed at the same time, purported to convey to the trustee all of the property, real and personal, both of the firm and of B. and H. Loewenberg, the individual members thereof. These instruments were executed on January 2, 1895, and Mr. Glover, the trustee therein mentioned, immediately took possession of all the merchandise in the store of Loewenberg Bros., including the property in question. The plaintiff thereafter, but on the same day, commenced this action in which it sought to rescind the sale to Loewenberg Bros., on the ground above indicated, and to obtain possession of the goods. The cause proceeded to trial and, after the plaintiff had introduced its evidence, a non-suit was entered in favor of Loewenberg Bros., on the ground, it seems, that the action could not be maintained against them, as they were not in possession of the goods and claimed no title thereto.

It appeared on the trial that the debts to be paid by the trustee were all evidenced by promissory notes which were past due at the time of the transfer, and that one Julius Lowenberg was liable on one of them, at least, as maker, and on others as indorser. At the close of the evidence, the court directed the jury to return a verdict for the defendant Glover, on the ground, as then stated, that Julius Loewenberg was liable on one of them, at least, as We presume, from this statement, that the trial judge was of the opinion that the creditors for whose benefit the prop-

erty was conveyed to Mr. Glover, by relinquishing and surrendering to him these notes, thereby became *bona fide* purchasers for value, and that their trustee was entitled to retain the goods as against the original owner; and it is conceded by the counsel for plaintiff and appellant that, if these preferred creditors were *bona fide* purchasers for value, they were entitled to retain the property in dispute in this action, even though the same may have been obtained from appellant by fraudulent representations on the part of Loewenberg Bros. He contends, however, that they are not *bona fide* purchasers; that the claim of one of the alleged creditors, at least, which was directed to be paid, was invalid, and that, even if all the claims for which the property of the firm was transferred were just and valid, appellant is nevertheless entitled to recover, for the reason that a sale, or assignment, of goods obtained by fraud, without other consideration than the payment of a pre-existing debt, does not constitute such vendee or assignee a *bona fide* purchaser for value, in contemplation of law.

If this last proposition announces the correct doctrine, the judgment must be reversed, if the goods were obtained by the means alleged, for, in our opinion, the consideration for the conveyance was nothing more nor less than the payment of antecedent debts. Nothing whatever was paid at the time of the transfer. No new liability was incurred, and no worse position was assumed, by either of these creditors. One note of the firm for $31,175.68, which constituted the claim of the London & San Francisco Bank, and which was delivered to the trustee of the creditors, was originally given to Julius Loewenberg, a member of a former firm of Loewenberg Bros., and was indorsed by him to the bank as collateral security for his individual indebtedness, and, therefore, the bank, by surrendering

the note, was deprived of no right as against him. In fact, all the claims for which the property was transferred were treated by the parties to the transaction as mere debts of Loewenberg Bros., and the fact that such debts were evidenced by notes we conceive to be wholly immaterial.

The vital question then is, Are these preferred creditors, through their representative Glover, entitled to hold the property in question, as *bona fide* purchasers or assignees, as against appellant, assuming that the goods were procured by fraud by Loewenberg Bros.? While there is some conflict in the decisions on this question, the great weight of authority seems to be in favor of a negative answer. It is well settled that one who has been induced by fraud to part with his property may disaffirm the sale and reclaim the property from the fraudulent vendee. He may lose this right, however, by treating the purchaser as the owner of the property so obtained, after discovering the fraud, and will lose it absolutely if, during the time intervening between the delivery of the goods and the attempted rescission, the goods have been sold to an innocent purchaser for a valuable consideration, or, in other words, to a *bona fide* purchaser for value.

It was well said by ALLEN, Judge, in *Barnard v. Campbell*, 58 N. Y., at page 76 (17 Am. Rep. 208), that:

" The superior equity of a purchaser of property from one who has acquired a title defeasible at the election of the former owner and vendor, by reason of fraud, to that of such owner seeking to reclaim his property, is based upon the fact that, acting upon the evidence of title which the owner has permitted the wrong-doer to assume and possess, he has been induced to part with value, and will be the loser because of the credit given to the apparent ownership if he is compelled to surrender the property. The mere possession by the party claiming to hold will

not sustain his claim, but the circumstances under, and consideration upon which he has acquired the possession are also material. Were it otherwise, an assignee for the benefit of creditors, or one who should take as collateral security for the payment of a precedent debt, would hold as against the original owner, which is not claimed and is contrary to the whole current of authority. Several things must concur to bar the claim of the defrauded vendor. (1) He must have parted with possession of his property with intent to pass the title to the wrong-doer, thus giving him the apparent right of disposal. If property is taken feloniously or without the consent of the owner the taker can make no title to it, even to an innocent purchaser with value. (2) A third party must have acquired title from the wrong-doer without notice of the defects in his title or knowledge of circumstances to put him to an inquiry as to the source of his title. And, (3) Such third party must have parted with value upon the faith of the apparent title of the wrong-doer, and his right to dispose of the property. If any of these elements are wanting the vendor seasonably pursuing his legal right may have his property."

This quotation clearly sets forth the principle and the reasons upon which the decisions of the courts are generally based, and it seems to us that what is there said is peculiarly applicable to this case. Considered either as purchasers or assignees, these creditors neither parted with value nor incurred obligations upon the faith of the apparent title of Loewenberg Bros., and their rights are, therefore, inferior to that of appellant. While we do not decide that a pre-existing debt would not, in any case, constitute a good and sufficient consideration for the transfer of property, we do hold that if appellant was, in fact, induced to sell these goods by fraudulent representations, as alleged, it has a right to reclaim them from the respondents.

In *Scott v. McGraw*, 3 Wash. 675 (29 Pac. 260), this court held that a vendor of goods sold upon credit might rescind the sale for fraud on the part of the vendee and

recover the goods from a sheriff holding them under a writ of execution, for the reason that the sheriff was not a *bona fide* purchaser; and we think that a mere trustee for creditors occupies no better position than a sheriff who holds possession by virtue of an execution. That the creditors of Loewenberg Bros. are not entitled to the rights of *bona fide* purchasers will be seen by reference to the following authorities: Cobbey, Replevin, § 286; Benjamin, Sales (Bennett's ed.), p. 447: *Farwell v. Hanchett*, 120 Ill. 573 (11 N. E. 875); *Barnard v. Campbell, supra; Coddington v. Bay*, 20 Johns. 637 (11 Am. Dec. 342); *Sargent v. Sturm*, 23 Cal. 359 (83 Am. Dec. 118); *Work v. Jacobs*, 35 Neb. 772 ( 53 N. W. 993); *Overstreet v. Manning*, 67 Tex. 657 (4 S. W. 248); *Henderson v. Gibbs*, 39 Kan. 679 (18 Pac. 926); *Farley v. Lincoln*, 51 N. H. 577 (12 Am. Rep. 182); *Sleeper v. Davis*, 64 N. H. 59 (6 Atl. 201, 10 Am. St. Rep. 377); *Eaton v. Davidson*, 46 Ohio St. 355 (21 N. E. 442).

In 21 Am. & Eng. Enc. of Law, p. 575, many other cases are collected, and a few cases are also referred to as holding a contrary doctrine.

Thus far, it will be remembered, we have assumed that the goods in controversy were obtained from appellant by Loewenberg Bros. upon fraudulent representations. But, as a matter of fact, that question has never been properly determined. There was such a marked conflict in the evidence bearing on that subject, that it should have been submitted to the jury. The agent of appellant testified, in substance, that at the time he was negotiating the sale to Loewenberg Bros. they stated to him that they were perfectly solvent; that their real estate alone was worth double the amount of their debts, and that they had made a statement, in writing, of their assets and liabilities to a certain mercantile agency, which statement showed their

financial condition, and to which they directed his atten-
tion, and that he examined this statement before forward-
ing the order for the goods to appellant, and that the
goods were shipped on the faith of these representations.
It was clearly shown on the trial that Loewenberg Bros.
were at that time hopelessly insolvent, and that they owed
over $100,000 more than the indebtedness shown by their
statement to the mercantile agency. B. Loewenberg tes-
tified that no statements were made to appellant's agent as
to the financial condition of the firm of Loewenberg Bros.
He admitted, however, that he made the statement to the
mercantile agency, which appellant claims to have relied
on, and that it was not true. But he averred that it was
not made to obtain credit, but to avoid being blackmailed.
Upon this evidence, the question whether the goods were
or were not obtained by fraudulent representations was one
of fact for the determination of the jury.

Appellant complains of the action of the court in dis-
missing the case as against Loewenberg Bros., and, inas-
much as it had the right to recover from them, in case of
a recovery against respondent Glover, the value of the
goods not turned over to the latter, we think the motion
for a non-suit should not have been granted, although we
would not be disposed to reverse the judgment upon that
ground alone.

We are also of the opinion that the trial court should
have allowed counsel for appellant greater latitude in the
examination of respondents Loewenberg on the issue of
fraud. But we will not extend this opinion by pointing
out specifically the particular questions to which objec-
tions were made and sustained.

It is claimed on behalf of the respondents that appel-
lant, after becoming fully aware of the financial embarrass-
ment of Loewenberg Bros., endeavored to get this claim

secured, and could not thereafter elect to rescind the sale. It is true that appellant's agent offered to pay off a mortgage on certain real estate of Loewenberg Bros., if they would give appellant a second mortgage for the amount so paid, together with the amount due it. But it appears that he was not aware of the fact that their financial condition was entirely different from what he supposed it was when he sold them these goods, and that he had no knowledge of the particular debts to pay which they surrendered up and transferred the whole of their property; and, if that is so, it cannot be said that what he did amounted to a ratification of the sale, or operated as a bar to a rescission.

The judgment is reversed and the cause remanded for a new trial.

SCOTT, C. J., and GORDON, J., concur.