Smith v. Eaton.

---

(\*) SMITH & al. in Scire Facias, versus EATON & al.

The Court has no jurisdiction of a trustee suit, in which it appears that the
debtor and trustees all reside out of the State, and have no property in it.

Such a suit, if the objection be seasonably taken, will be abated.

It is no valid objection to a trustee's disclosure on *scire facias*, that it was
made before a justice of the peace.

It is a general rule, that, to a defendant in *scire facias*, no ground of defence
is open, which he might have taken in the original suit.

Whether a trustee, who has suffered a default in the original suit, can by
a disclosure on *scire facias* take objection to the jurisdiction; *quere.*

Property belonging to a resident of New Brunswick, and situated within the
territorial jurisdiction of that Province, upon his obtaining a certificate of
bankruptcy under its laws, is thereby transferred to his assignee.

After such a transfer, one who had been indebted to the bankrupt, being
no longer accountable to him, cannot be charged as trustee in a suit against
him.

ON EXCEPTIONS and ON REPORT from *Nisi Prius*, HATH-
AWAY, J., presiding.

SCIRE FACIAS.

The plaintiffs reside in this State. They brought their
action, (returnable to the late District Court,) against James
Albee, Jr., as principal defendant, and against Henry F. Eaton
and Joseph E. Eaton, as his trustees.

Albee and the Eatons are inhabitants of the British Pro-
vince of New Brunswick, resident in the town of St. Ste-
phens, adjoining the boundary line of this State. As they were
occasionally doing business in this county, the process was
served upon them here. Neither of them making any appear-
ance in that suit, the principal defendant was defaulted, and
the Eatons were adjudged to be trustees. Upon the execu-

Smith *v.* Eaton.

tion that was issued, the officer made demand seasonably upon the trustees.

This is an action of *scire facias* against them as trustees. At its return term, they offered a disclosure made prior to the entry of the action.

It was made before a justice of the peace. For that reason the plaintiffs objected to its admission. It was however received, and they filed an exception.

From the disclosure, accompanied by documentary evidence, it appeared among other things *that*, before the service of the original writ, Albee had been decreed to be a bankrupt; *that* his assignee had been appointed; and *that* he, (Albee,) had obtained from the commissioner a full discharge, which had been duly certified by the Court of Chancery, according to the laws of that Province.

The disclosure also unfolded a series of large transactions between the trustees and the principal defendant, and denied any indebtednes by them to him.

To control that disclosure, the plaintiffs offered in evidence the deposition of one James Albee and also the disclosure made by these defendants, in the suit *Lovejoy* v. the same *James Albee, Jr.*, in which they were summoned as trustees.

The case was then submitted to the Court for such judgment as the law requires.

*Whidden*, for plaintiff.

These defendants are sought to be charged by reason of their holding funds of the principal defendant, under a trade which we say was a fraud against his creditors. They were defaulted and adjudged trustees in the original suit. But they now come and deny the jurisdiction of the Court, and file a disclosure denying any goods, effects or credits of Albee.

The truth of this disclosure we controvert, and contend, that it is wholly disproved by their own disclosure made on oath in *Lovejoy* v. *Albee & trustees*, referred to in 33 Maine, 414, and also by the deposition of James Albee.

*J. Granger*, for the defendants.

This action is not maintainable. It is but a continuation of

the original proceedings, the Court in that suit had no juris diction, and therefore the judgment upon default is merely void. 9 U. S. Dig. title, *Scire Facias ; Lovejoy* v. *Albee,* 33 Maine, 414, and cases there cited ; *Gardiner* v. *Barker,* 12 Mass. 36 ; *Jacobs* v. *Miller,* 14 Mass. 132 ; *Tingley* v. *Bateman,* 10 Mass. 343 ; *Eaton* v. *Whitney,* 3 Pick. 484 ; *Guild* v. *Richardson,* 6 Pick. 364 ; *Lawrence* v. *Smith,* 5 Mass. 362.

The statute provision, extending the trustee process to foreigners, can be of little avail, as it will seldom be practicable to compel the trustee to bring the funds or property into the State to be taken on execution.

It seems to have been decided, that that provision is not applicable, when [the defendant and his supposed trustee all resided out of the State. *Lovejoy* v. *Albee,* 33 Maine, 414. The disclosure itself shows, that the defendants cannot be held.

[*Chase,* for the plaintiffs interposed. — We object to any reference to the contents of the disclosure. We filed an exception to its introduction, on which we now rely. The disclosure could not be taken before a justice of the peace, especially the disclosure of a trustee not resident within the jurisdiction. R. S. c. 119, § § 9, 10, 11, provides that if the trustee is to depart from the State, he may notify, and disclose before a justice of the peace. But the Court may require him to answer further on oath, and this too, not before the justice, but in Court. After taking the disclosure, the justice has no further power. It is not for him to decide, whether the trustee shall or shall not answer further. The further answer must be in Court, and not by mere pleading, but on oath. The disclosure then was not rightfully admitted, and the admission of it having been excepted to, its contents are not here to be stated or examined.]

*Granger,* for defendants.

The disclosure itself shows, that the defendants cannot be held.

It is very clear, that if Albee could maintain no action against the defendants in New Brunswick, where they reside,

these plaintiffs cannot maintain this action. *Blake* v. *Williams*, 6 Pick. 287; *M. F. Ins. Co.* v. *Weeks*, 7 Mass. 438.

And how, upon what principle, could Albee maintain an action against the defendants?

Even if defendants had been indebted to him and had his property in their hands, the disclosure shows that it passed to the assignees by the proceedings in bankruptcy.

The defendants could not defend against a suit by the assignee in bankruptcy by showing payment to the plaintiffs in this suit on execution against them.

*Chase*, for the plaintiffs, in reply.-

I come to this cause with some diffidence, because it *seems* to be understood that, in *Lovejoy* v. *Albee*, the Court gave some intimations unfavorable to a suit of this kind. But I think *that* case turned merely on the want of *personal service* on the trustees. If so, it does not disprove jurisdiction, but only proves the want of parties properly in Court. In *this* case the principal defendant and also the trustees were served with personal notice *in the State*. The cases then are different. *There*, too, the question was on original suit, *here*, on *scire facias*. In *that case* there was a right to say "not notified;" not so in *this case.*

The privilege of one summoned as trustee, is merely to disclose, not to inquire into jurisdiction. Why, he has to apply to the Court for the very leave, if he wish to disclose anew.

The objection to jurisdiction must be taken in the original suit.

When a trustee asks for leave to disclose anew, it is to put before the Court a case for their adjudication, thus admitting jurisdiction. This privilege of a trustee is merely a *locus penitentiæ*, an opportunity to correct mistakes. It is too late to say, "no jurisdiction."

Thus I am relieved from the difficulty supposed to arise from the decision in *Lovejoy* v. *Albee.*

But there are views presented in that case by the Court, from which I have the misfortune to dissent.

The Court say they cannot act beyond the territorial sov-

ereignty. But clearly, if goods are found here, they can be bound by a judgment of the Court. Now I think *goods* can be equally bound *in rem* by the trustee process as by an attachment on writ. So of property in the pocket of the debtor, though intangible. Suppose a person to come into the State holding property of one, who, if within the State could be held here; can it be allowed that such a person, with such property in his possession, should secure it from the law? The great ordinance of the law is, that such property shall be subject to pay debts due to our own citizens. And under such a principle, what difference can it make whether the property be tangible or intangible. The question, as between the creditor and debtor, is not now under consideration. Have we not brought all parties properly before the Court? The legislature has provided that notice in many classes of cases, though given *out* of the State, perfects the jurisdiction. But in this case the notices all were given *within* the State.

The statute authorizes suit to be brought where either of the parties reside. This shows that the Court may get jurisdiction as to dwellers abroad. How plain to a common reader, that the trustees, if holding the defendant's property, and found and summoned here, may be charged for such property. The statute expressly authorizes the summoning of foreigners, if holding property.

But, if the party be actually present and summoned here, what reason can be given why there should not be jurisdiction in the Court equally, whether property be or be not found?

The process could avail nothing to a plaintiff, if the trustee disclosed no property. But such a rule does not touch the question of jurisdiction.

Surely it is more favorable to a foreigner, that he should be held as trustee, than to have tangible property attached, and withheld from his use.

I do not controvert the authorities on which the decision in *Lovejoy* v. *Albee* is placed. There is no occasion. Our system is statutory; more comprehensive and salutary. That decision, however, in its practical bearing is of injurious tendency.

A trade has long been growing up on the frontier, between the dwellers on both sides of the State line. Credits have been mutually and freely extended. The trade has become large and beneficial. That decision breaks it up, and impairs the ties of friendship, kindness and confidence which have so happily prevailed.

In this view it is submitted very respectfully, that the Court has full jurisdiction; and if the disclosure is to be acted upon at all, an examination of its detailed facts will show indebtedness by the trustees; but when taken in connection with the depositions we have introduced, their liability is abundantly apparent, and it is not seen why they are not to be charged.

APPLETON, J. — It was decided in *Lovejoy* v. *Albee*, 33 Maine, 415, that this Court has no jurisdiction where the defendant and trustee both reside without the State, and have no property within it. If in the original suit in which the defendant was summoned as trustee, objections to its maintenance had been seasonably interposed by plea or by motion it would have been abated. The alleged trustee, instead of taking exception, submitted to the jurisdiction, suffered a default, and an execution issued upon which a demand has been duly made on him.

The general rule of law undoubtedly is, that the defendant in *scire facias* cannot avail himself of any ground of defence which was open to him in the suit of which that is a continuation. It may be a question, therefore, whether the defendant can take advantage on his disclosure on *scire facias* of the want of jurisdiction of the Court in rendering the judgment in which he was defaulted, or whether his only remedy is not in reversing it by writ of error. In the view, however, which we have taken, the determination of this question does not become necessary. From the disclosure of the trustees on *scire facias*, it appears that Albee, the defendant, and the trustees in the suit *Smih & al.* v. *Albee & trustees*, are now and ever have been residents in the Province of New Brunswick; that on January 4, 1849, Albee became a bankrupt; that an

assignee was appointed, and that on the 17th April, 1849, some days before the service of the trustee writ on the defendants, he obtained a certificate of discharge from the commissioner and certified by the Court of Chancery under the acts, 5 Vict. c. 43, and 6 Vict. c. 4. These facts being set forth in the disclosure and established by documentary proofs, the defendants claim that they should not be considered as having any goods, effects or credits of the principal debtor in their hands or possession, that even if indebted to Albee, which they deny; that such indebtedness has ceased and new relations have arisen between themselves and his assignee binding upon them by the law of the country to which they owe allegiance.

From the answers of the defendants, it appears that previous to his bankruptcy they had large dealings with Albee and received from him various conveyances of real and personal estate, on account of which the plaintiffs claim that they should be charged. To determine this, resort must be had to the law of the domicil of the principal debtor and the trustees, for if no indebtedness exists there, none can arise from merely passing over the line, which divides one government from another. Now by the law of New Brunswick, the bankrupt is divested of all property within its territorial jurisdiction, and the same is transferred to the assignee as effectually by operation of law as it could be by the most solemn contract of the parties. *Bradbury* v. *Stephenson*, 1 Allen, 631. For the real estate conveyed, the trustees could not have been charged, had it been situated in this State. The laws regulating the acquisition or the transmission of title to personal estate are those which are in force where the owner is domiciled. The owner of personal property situated in the country where he resides, has a title to it wherever he may be. It is true, that when the property is here at the time of the assignment, the title of the foreign assignee is postponed to the claims of creditors resident in this country, but this principle does not apply, when it was at the time of his bankruptcy in the jurisdiction in which the bankrupt resided, and

has since been brought here. In *Pastoro* v. *Abraham*, 1 Paige, 237, the controversy was between the bankrupt and his assignees and creditors, all residing in the country under whose laws the assignment was made. In delivering his decision, WALWORTH, Ch. says, "even the property itself at the time of the assignment was constructively within the jurisdiction of that country, being on the high seas, in the actual possession of a British subject. Under such circumstances the assignment had the effect to change the property, and divest the title of the bankrupt, as effectually as if the same had been sold in England under an execution against him, or he had voluntarily conveyed the same to the assignee for the benefit of his creditors." The same doctrine was fully affirmed in the opinion of MARCY, J., in the same case, in 3 Wend. 538, and is sanctioned by Story in his Conflict of Laws. A large proportion of the property purchased by the original defendant consisted of logs and lumber. If that purchase was in good faith, the title was vested in the purchaser. If void for any cause, the assignment transferred it to the legally appointed assignee. So too if any contracts were in force between these defendants and Albee, or any equitable relations subsisting between them, they were transferred, and the title to them and the right to enforce them was perfected in the assignee. The bankrupt, his assignee and the defendants were all domiciled in New Brunswick, subject to the laws of that Province, and while they were all thus subjects, all the assets of the bankrupt, whether real or personal, whether equitable or at common law, passed from him as entirely as if his death had intervened. Every State has uncontrolled jurisdiction over all property, real or personal, within its territory. The defendants had ceased to be the debtors of Albee or to hold any property of his; new relations had arisen and become perfected, by which whatever obligations they were under to him, if any, were henceforth due to and were to be enforced by another. By leaving temporarily that government no change in their legal rights or duties was created, and if they then ceased to have any goods, effects or credits of the principal

debtor, there has nothing occurred since, by which they can justly be adjudged to possess them. Whether the *lex loci contractus*, the *lex rei sitæ* or the *lex domicilii* is to govern, is immaterial, as in either event the rights of the parties must depend on the law of the Province of New Brunswick, and according to those laws, whether they had had the property of the principal debtor in their hands or not, or had been indebted to him or not, they must be discharged, as the title to such property, and the right to enforce all subsisting contracts, had become perfected in the assignee of Albee.

These views do not conflict with the principles established in *Blake* v. *Williams*, 6 Pick. 286, and in *Holmes* v. *Remsen*, 20 Johns. 299, in which it was held that an assignment in bankruptcy in England does not transfer the personal property of the bankrupt here, or his debts due from our citizens as against his creditors resident here. But in those cases the property was in this country at the time of the assignment, and consequently amenable to our laws. The debtors of the bankrupt were citizens and subject to our jurisdiction. In this case, the property was in a foreign land, and the defendants were the subjects of a foreign government and bound by its laws. When they came within our jurisdiction, they brought with them their existing relations to their own citizens, according to the laws of their country. *Potter* v. *Brown*, 5 East, 129.

But it has been urged that the assignment of the bankrupt was fraudulent on his part, and that therefore nothing passed to his assignee. Were it so, whatever might be its effect on the bankrupt's discharge, it would not reïnvest him of his former estates. In *Morrison* v. *Albee*, 2 Allen, 145, the certificate of discharge of the same Albee, whose trustees the defendants are alleged to be, received the consideration of the Supreme Court of New Brunswick. It was there held that evidence that the bankruptcy was fraudulent and collusive, was inadmissible, in a trial in *Nisi Prius*, to impeach a bankrupt's certificate duly obtained from the commissioner and certified by the Court of Chancery, under the acts, 5 Vict.

c. 43, and 6 Vict. c. 4. CARTER, C. J., in his opinion says, "all our act requires to give validity to the certificate is, 1st, that it should be under the hand and seal of the commissioner with certain requisites as to form and substance ; 2d, that the bankrupt should make oath that it was obtained fairly and without fraud, &c., and 3d, the subsequent confirmation by the Court of Chancery, which is not made without affording an opportunity to the creditors to oppose it."

Indeed it is difficult to perceive upon what principles the trustees could be charged for real or personal estate situated in another government or for contracts to be there performed, or how they could be required to remove property from another jurisdiction for the purpose of exposing it here to be levied on. *Lovejoy* v. *Albee*, 33 Maine, 415 ; *Baxter* v. *Vincent*, 6 Vermont, 615. *Defendants discharged.*

SHEPLEY, C. J., and TENNEY, RICE and HATHAWAY, J. J., concurred.