Argued April 25; affirmed May 22, 1934

# McCULLOCH *v.* KOLLOCK ET AL.

(32 P. (2d) 770)

*Lyndon L. Myers,* of Portland (John K. Kollock and McCamant, Thompson & King, all of Portland, on the brief), for appellants.

*Howard T. McCulloch,* of Portland, for respondent.

ROSSMAN, J. This appeal is based upon a single assignment of error which presents the issue whether the evidence supports the fourth finding of the court and its judgment. The fourth finding declares:

"On or about August 23, 1927, defendants John K. Kollock and Russell Hawkins, acting as receivers of Ralph Schneeloch Company, secured the possession and control of said bond of plaintiff and thereafter, with full knowledge and notice of plaintiff's ownership, title and claim to ownership and title in said bond, said defendants John K. Kollock and Russell Hawkins wrongfully converted and appropriated said bond to uses other than those of plaintiff."

The Ralph Schneeloch Company, prior to its insolvency, was engaged as a broker in the sale of securities. March 4, 1927, it sold a bond of $500 denomination of a new issue of the Missouri Pacific Railway Company to the plaintiff, and since the bond was not ready for delivery an interim certificate was given to her. In the latter part of July or the early part of August, 1927, the Schneeloch Company received the bond and at once attempted to deliver it to the plaintiff, but its efforts failed because of her absence from Portland. August 5, 1927, the Schneeloch Company procured a loan of money from one Chriss A. Bell and secured its payment by pledging the aforementioned bond to Bell who acted in good faith and was wholly unaware of the fact that the plaintiff had purchased and paid for the bond. August 10, 1927, the Schneeloch Company was decreed insolvent and the defendants John K.

Kollock and Russell Hawkins were appointed its receivers. Almost immediately thereafter the plaintiff fully informed the receivers of the circumstances of her purchase of the bond and demanded that they deliver it to her. At that time the bond was not in the defendants' possession. September 23, 1927, the defendants paid Bell $450 of money in their possession as receivers and he thereupon delivered the bond to them. Immediately upon its receipt the defendants sold it in their names as receivers to E. A. Pierce & Company for $497.03. Shortly after this sale the defendants paid to Bell $47.03 and thus he received the entire sum which the receivers were paid by E. A. Pierce & Company for the bond. The plaintiff claims that when Bell delivered the bond to the defendants it became their duty to deliver it at once to her, and that their failure to do so, accompanied by their sale to Pierce & Company, constituted a conversion rendering them liable to her. The defendants claim that prior to Bell's delivery of the bond to them they had effected an arrangement with many of the secured creditors of the Schneeloch Company, including the plaintiff, whereby they accepted the pledged securities as agents of the secured creditors for the purpose of the liquidation of the secured debts, and that since they accepted the Missouri Pacific bond in this way they owed no duty to return it to the plaintiff.

The evidence upon the issue just mentioned came from the receivers and one of their employees. Mr. John K. Kollock, one of the two co-receivers who also acted as their attorney, and who, therefore, may be considered as well informed, testified: "When the receivers were appointed this $500 Missouri Pacific bond was in the possession of Chriss Bell under a sale and repurchase agreement with him by which Ralph

Schneeloch Company agreed to take the bond off his hands at any time on demand, or whenever it would be paid for. Arrangement was made with Mr. Bell, as with anybody else that had such agreements, or straight pledge agreements, that collateral held by it or—would be sold out by the receivers from the possession of the pledgee and the entire purchase price applied. On September 23, 1927, I find from checking the records—this is my own recollection—that this particular bond was so sold to E. A. Pierce & Company for, I think, $497.00, and the full amount thereof turned over to Mr. Bell, $450.00 earlier in the day and $47.00 in the afternoon by the letter signed by Mr. Hawkins which has just been referred to, and the bond was delivered immediately from Mr. Bell's office to E. A. Pierce & Company and put through the ordinary course of transmittal for payment.'' When the witness was asked, ''The receivers afterwards redeemed that Chriss Bell bond, didn't they?'' he replied, ''Yes.'' It will be observed that Mr. Kollock described the arrangement between Mr. Bell and the Schneeloch Company as ''a sale and repurchase agreement''. The record discloses only vaguely the terms of this agreement. However, Mr. Bell testified: ''That was the term used 'we will repurchase it at any time on demand' but on the other hand, I would have to foreclose it if I wanted to get it.'' Mr. Kollock gave the following explanation: ''That word 'redeemed' might be subject to legal explanation—I don't know. The facts were that that bond was in possession under a sale and repurchase agreement, which Mr. Bell called a collateral agreement in his testimony, and when we went in as receivers we found that bond there, and it could be obtained by payment of the amount pledged.'' When Mr. Kollock was asked, ''Well, you had to pay Mr. Bell

for the bond before he would give it to you?" he answered, "Sure." He also testified: "At the time we got delivery from him we still owed him $47.00 on the agreed purchase price of that bond and paid him that amount that afternoon." Having received the bond, the receiver sold it, as we have already stated, to E. A. Pierce & Company by means of a sight draft drawn upon the latter for $497.03 which was deposited to the credit of the receivers in their bank. The two sums were paid to Bell by checks of the Ralph Schnee-loch Company signed by the receivers. The sale to Pierce & Company was effected through the use of billheads of the Ralph Schneeloch Company with the receivers' names over that of the Schneeloch Company, and bearing no evidence of the alleged agency on behalf of Bell. Mr. Russell Hawkins, the other co-receiver, gave a version of the circumstances attendant upon the repossession of the bond which could readily induce the conclusion that the receivers, in taking possession and making sale to E. A. Pierce & Company, were act-ing as Bell's agents. He was careful to testify, how-ever, "I have no particular remembrance of that trans-action", and added that he was describing merely "our policy" in regard to pledged securities. In giving his testimony he made use of the terms "I think" and "I suppose". Resort to these terms, and especially his lack of knowledge concerning this transaction, de-prives his testimony of virtually all of its value. Jerome Lasselle, bookkeeper for the corporation, and subsequently retained in the employ of the receivers, gave a version similar to that of Mr. Hawkins, but, after it became apparent that he possessed no knowl-edge whatever of the transaction except such as he had gathered from an inspection of the books and letter-files, the court struck his testimony from the

record as hearsay. The documentary evidence just mentioned indicates, as we have already stated, that the receivers paid Bell $450 out of funds in their possession before he delivered the bond to them, that they receipted for it and sold it to Pierce & Company in their names as receivers and deposited the proceeds in their receivership account.

We have quoted above the trial judge's finding upon the above issue. No objections to the findings were filed by the defendants, and they submitted none themselves. We believe it is apparent that the above-quoted finding is supported by competent, substantial evidence. By virtue of section 2-503, Oregon Code 1930, this finding must be "deemed a verdict" and cannot be disturbed when supported by evidence of the character just mentioned: *Lake v. Patty*, 142 Or. 543 (20 P. (2d) 1078). Moreover, as was said in *McPheeters v. Smith*, 85 Or. 595 (167 P. 575), "Where the findings are sufficient to justify a judgment for one party, and the other party fails to object to them or to request findings conformable to his theory, the findings made will stand." See also *Maddox v. McHattan*, 111 Or. 324 (224 P. 833, 226 P. 427).

Thus, the facts before us indicate that when the defendants received this bond into their possession they took it, not as agents for Bell, but in their capacity as receivers. Bell's interest had been extinguished. At that time the defendants were fully aware of the plaintiff's ownership of the bond. Such being the situation Bell's innocence could not help the defendants when they became owners nor absolve them from their knowledge of the plaintiff's rights: Daniel on Negotiable Instruments (7th Ed.) sec. 936. As we have seen, the defendants sold the bond to E. A. Pierce & Company the moment they received it from Bell and de-

posited the proceeds to their receivership account. They do not contend that it came into their hands subject to a lien in favor of the general creditors to the extent of the sums employed for its redemption, and that, hence, they owed no duty to surrender it to the plaintiff. Likewise, the evidence does not disclose the status of the receivership estate. Further, the defendants do not contend that they are not liable in their fiduciary capacity. The sole question presented by the appeal, as we have said before, is the attack upon the above-quoted finding of fact. That being true, the circuit court did not err when it held that the defendants converted the bond to the use of the estate when it sold it to E. A. Pierce & Company instead of surrendering it to the plaintiff.

It follows that the judgment of the circuit court entered against the defendants in their fiduciary capacity must be affirmed.

RAND, C. J., and BELT and CAMPBELL, JJ., concur.