Argued March 2; affirmed April 6; rehearing denied May 11, 1943

# KEEGAN ET AL. *v.* LENZIE

(135 P. (2d) 717)

Before Bailey, Chief Justice, and Belt, Rossman, Kelly, and Hay, Associate Justices.

R. F. *Hollister,* of Portland, for appellant.

*Edwin D. Hicks,* of Portland, for respondent.

HAY, J. In the month of May, 1940, Tom Boylen, Jr., was engaged in the sheep business, not only as a sheep raiser but also quite extensively as a trader. He had been in that business for a good many years. His headquarters were at Pendleton, Oregon. The plaintiffs were copartners and were likewise sheep raisers, as was one Patrick Charles. On May 15, 1940, the plaintiffs entered into a written contract for the sale and delivery to Boylen of their entire 1940 crop of mixed Lincoln crossbred lambs, comprising about 1,050 head, at a price of $8.40 per cwt. The lambs were to be delivered f. o. b. cars at the stockyards at Umli, Oregon, on or about September 5th to 20th, and were to comply with certain specified standards as to freedom from disease, etc. $500 was paid on the execution of the contract, an additional $500 on August 5, 1940, and the balance was to be paid on delivery of the lambs. On the same day, Patrick Charles made a similar written contract with Boylen for the sale of his 1940 crop of mixed Lincoln crossbred lambs, consisting of about 600 head. He received a down payment of $300, a further payment of $300 on August 5, 1940, and it was agreed that the remainder of the sale price should be paid on delivery.

On September 20, 1940, the plaintiffs and Charles, under their contracts, delivered to Boylen at Umli, Oregon, about 1,500 head of lambs. Boylen thereupon delivered to plaintiffs his draft in the sum of $4,318.46, and to Charles his draft in the sum of $2,120.34, in payment of the balances then due under their respective contracts. These drafts were signed by Boylen by his agent, R. E. McGreer, and were drawn upon himself and payable through the Pendleton branch of the United States National Bank of Portland, Oregon.

Umli, where the sheep were delivered on board railroad cars, is a small station of the Southern Pacific railroad in the Cascade mountains. There is no station agent. No documentary evidence of title was given to Boylen by the plaintiffs or by Charles, nor was any bill of lading procured by them for the lambs. Boylen shipped the lambs to himself at Crescent Lake, Oregon, and, at 7 o'clock p. m. on the same day, without the knowledge or consent of the plaintiffs or of Charles, he called the defendant by telephone from some point in Oregon and offered to sell him 955 head of said lambs, delivery to be made at Toppenish, Washington. The defendant, speaking by telephone from some place in Washington, accepted Boylen's offer of sale and, in so doing, acted in good faith and without knowledge of any defect in Boylen's title to the lambs, or of the claims of plaintiffs or of Charles thereto. On September 21st, Boylen drew his draft on the defendant for the sale price of the lambs, which, on September 23d, was duly honored by the defendant. On Sunday, September 22d, Boylen made an assignment of his assets for the benefit of his creditors. He was completely insolvent and his affairs were extremely involved.

On September 23d, Charles passed Boylen's draft through his account with The Dalles branch of the United States National Bank. On September 25th, the plaintiffs passed Boylen's draft through their account with the same branch of the United States National Bank. Both drafts were forwarded to the Pendleton branch of the bank, and that branch returned them to The Dalles branch, with notations thereon, "unable to collect, contact drawee". The drafts were received back by The Dalles branch on September 28th. On that day, The Dalles branch notified plaintiffs and Charles respectively that the drafts were unpaid.

Shortly after the plaintiffs and Charles learned that Boylen's drafts had not been honored, they traced the lambs and located the 955 head in possession of the defendant at Toppenish, Washington. They thereupon demanded the return thereof, which demand the defendant refused. It was thereupon agreed between the parties that the reasonable market value of the lambs sold by Boylen to the defendant was the sum of $4,794.55, and that, in the event that it should be determined that the defendant was liable to the plaintiffs and Charles in the premises, such sum should be considered in lieu and in place of the lambs, and should represent his obligation. It was further agreed that this action might be filed in the circuit court of the State of Oregon for Clackamas County. Defendant thereupon sold the lambs to another person. Charles has assigned his claim to plaintiffs.

The plaintiff's amended complaint alleges the facts substantially as above set forth. The defendant, for his first affirmative defense, alleges that plaintiffs and their assignor respectively accepted Boylen's drafts in full and complete payment for their lambs, and that they presented the drafts for payment an unreasonable time after they had received them. For a second affirmative defense, he sets up the partial payments which plaintiffs and their assignor received of Boylen, and alleges that they voluntarily delivered the lambs to Boylen at Umli, Oregon, well knowing that he had resold or was about to resell them, and then and there gave him the right, or implied right, to deal with the lambs as his own, intending that the title thereto should pass upon delivery thereof; and that Boylen thereupon delivered his drafts to plaintiffs and Charles respectively, who accepted them as full and complete payment. For a third affirmative defense, he alleges

that, upon delivery of the lambs to Boylen, he, with the help and assistance of the plaintiffs and Charles, divided them in sundry lots for resale and reshipment by Boylen to various persons, including the defendant; that, within a few hours thereafter, Boylen telephoned to the defendant in the state of Washington from a place in the state of Oregon and offered him 955 head of the lambs for a price of $5,174.56, which offer defendant then and there accepted in good faith and without knowledge of any defect or alleged defect in the title to the lambs, and paid Boylen the agreed price; and that the defendant, prior to the commencement of this action, sold said lambs to a fourth party and is no longer in possession thereof. For a fourth affirmative defense, the defendant alleges that the lambs sold by plaintiffs and Charles to Boylen weighed 95,700 pounds, and that the market value thereof on September 20, 1940, at Umli, Oregon, was $8,038.80; that the weight of the 955 head of lambs sold and delivered by Boylen to defendant was 57,078 pounds, and that the market value thereof was $4,794.55; that the plaintiffs and Charles have received from Boylen the sum of $3,074.62 ''as partial payment on the 955 head of sheep sold and delivered by the said Boylen, to this defendant'', and that, if defendant is indebted to the plaintiffs at all, he is indebted only in the sum of $1,719.93 instead of $4,794.55.

The case was tried to the court without a jury, upon a stipulation of facts which was entered into by the parties, amplified by the testimony of the plaintiff, Charles Keegan. The court in due course made findings of fact, in which it found generally for the plaintiffs, and found moreover that neither the plaintiffs nor Charles, prior to the date when their checks

(drafts) were presented for payment, had any knowledge of the transaction between Boylen and the defendant in respect of the "shipment, consignment, sale, billing and transportation" of the lambs from Umli, Oregon; that plaintiffs and Charles presented their checks (drafts) for payment within a reasonable time after the drawing thereof, and that the checks (drafts) were duly dishonored and payment thereof duly refused by the bank; that plaintiffs and Charles had in no way acted so as to clothe Boylen with indicia of title or with authority to sell and pass title to the lambs, or at all; and that plaintiffs and Charles have received no sums whatsoever in payment of the purchase price of the lambs, save and except the advance payments which have been set forth above. Based upon such findings, the court made its conclusions of law to the effect that the title to said lambs at no time passed from plaintiffs and Charles to Boylen and to the defendant, under either the law of Oregon or of Washington; that plaintiffs and Charles presented their checks (drafts) to the bank for payment within a reasonable time after the drawing thereof, and that said checks (drafts) were duly dishonored and payment thereof was duly refused by said bank; that plaintiffs and Charles did not engage in conduct constituting a waiver by or estoppel of them to assert title to said lambs, and are not subject to a charge of laches in asserting title; that defendant has not established a defense of partial payment against plaintiffs, and that plaintiffs are entitled to recover of defendant the sum of $4,794.55, with their costs and disbursements. Judgment was entered accordingly, and the defendant has appealed. No bill of exceptions has been brought up, and the defendant bases his appeal upon the theory that the findings of fact do not support the judgment.

■■ The defendant did not in any manner test the sufficiency of the complaint in the trial court. In this court, however, he has demurred on the ground that it does not state facts sufficient to constitute a cause of action. His contention appears to be that the complaint is one for the rescission of the sales contracts between the plaintiffs and their assignor respectively and Boylen. The plaintiffs, however, say that this is an action in the nature of implied assumpsit, and that it is not based in any respect upon rescission of the contracts. As this court has said on many occasions, we have but one form of action in Oregon, and, while the complaint in this case contains allegations which might tend to support an action in trover, the only question which is presented by the demurrer is whether or not it states any cause of action whatever. *Lun v. Mahaffey,* 94 Or. 292, 185 P. 746. Moreover, no demurrer having been interposed in the lower court, the complaint will be much more liberally construed here than it would have been had it been tested at the proper time. *Siverson v. Clanton,* 88 Or. 261, 170 P. 933, 171 P. 1051.

■ The complaint, after alleging that the plaintiffs were the owners and in possession of the lambs in controversy, the making of the contracts for the sale thereof to Boylen, the delivery of the lambs on September 20, 1940, and the giving of the drafts and their subsequent dishonor, alleges that neither at the time of the giving of the drafts nor thereafter did Boylen have funds on deposit with the bank sufficient to pay the drafts (which are denominated as checks), "nor did he ever intend that the same should be paid upon presentment to said bank, or to himself, personally", and that the drafts have not been paid nor have the plain-

tiffs received any sums in payment of the sheep except the advances which were set forth. Continuing, the complaint recites the sale of part of the lambs by Boylen to the defendant without the knowledge of plaintiffs or of their assignor, and that the defendant became the purchaser thereof in good faith, for value and without notice; that the defendant is a resident of Washington; that prior to the commencement of this action, he sold the lambs to a fourth party,

"and it has been mutually agreed between the parties hereto that the reasonable market value of said sheep at the time of the said purported sale to defendant, shall be determined, and such figure shall represent the obligation, if any, to these plaintiffs, and such figure shall be considered in lieu and in place of said sheep; that plaintiffs allege that said reasonable market value, at the time of said purported sale to defendant, is and was the sum of Forty-Seven Hundred Ninety-Four and 55/100 ($4794.55) Dollars; that title to said sheep did not at any time pass from the said plaintiffs * * * to the said Boylen, and the defendant is indebted to plaintiffs in the full sum of $4794.55, by reason of the facts herein alleged; that said defendant has not paid said obligation, or any part thereof, and has refused payment of the same."

Analyzing these allegations, we find that in effect the pleader has set forth the ownership of the lambs by plaintiffs and their assignor, their agreement to sell the same to Boylen for cash on delivery, the delivery to him, the giving of drafts for the balance of the purchase price, the facts that Boylen had insufficient funds in the bank to pay the drafts and that he never intended to pay them, the dishonor of the drafts, Boylen's sale of 955 head of the lambs to the defendant, the fact that title to the lambs did not pass from plain-

tiffs or their assignor to Boylen, the reasonable market value of the lambs, the defendant's conversion thereof by his refusal to redeliver to plaintiffs and their assignor, his sale to a fourth party, and his agreement that the reasonable value should represent his obligation, if any, to the plaintiffs.

It is objected that no promise, express or implied, on the part of the defendant is alleged, but we do not agree. The theory of the complaint is that the defendant has converted the plaintiffs' property to his own use by selling it, and that the plaintiffs have waived the tort and brought assumpsit as for money had and received. This states a good cause of action. 26 R. C. L., Trover, sec. 36, note 7; *Lawson's Exor. v. Lawson,* 16 Gratt. (Va.) 230, 80 Am. Dec. 702. It does not seem to us that the complaint would be aided by a definite statement that, upon the facts recited, a promise to pay was implied, for such statement would be a conclusion. *Wilkins v. Stidger,* 22 Cal. 231, 83 Am. Dec. 64.

■ The defendant's good faith in the premises cannot avail him. 26 R. C. L., Trover, sec. 29; Idem, sec. 21; *Menefee Lumber Co. v. MacDonald,* 122 Or. 579, 260 P. 444.

"* * * A possession taken under a purchase from one without title, and who had himself been guilty of a conversion in disposing of the goods or chattels, is a possession unauthorized and wrongful at its inception, and which the absence of evil intent in the purchaser cannot make rightful or lawful. Such a possession is based on the assumption of a right of property, or a right of dominion over it, derived from the contract of sale; and what is this, in the legal sense, but a wrongful intermeddling or asportation or detention of the property of another? * * *

"* * * the conversion may consist simply of a purchase, even by an innocent party, of goods or other personal chattels from one who has himself been guilty of a conversion in disposing of them, where the buyer takes the goods or chattels into his possession or custody. The authorities to this point are numerous and overwhelming. * * *"

*Velsian v. Lewis,* 15 Or. 539, 542, 543, 16 P. 631, 3 Am. St. Rep. 184.

The demurrer is overruled.

■ The defendant complains that, whereas the complaint charges fraud on the part of Boylen, there was no proof of fraud. It is true that the law never presumes fraud but requires proof of it and, if title had passed from plaintiffs to Boylen in this case, the point would be important if return of the goods were sought. The action, however, is not claim and delivery, nor is it precisely for the price or value of the property. In *Maupin Warehouse Co. v. Fleming,* 121 Or. 531, 255 P. 606, which is cited by the defendant, title to the goods had passed.

"The invalidity of the transaction in the case at bar does not depend upon fraud, but upon the fact that one of the supposed parties is wanting, it does not matter how. Fraud only becomes important, as such, when a sale or contract is complete in its formal elements, and therefore valid unless repudiated, but the right is claimed to rescind it. It goes to the motives for making the contract, not to its execution; as, when a vendee expressly or impliedly represents that he is solvent, and intends to pay for goods, when in fact he is insolvent, and has no reasonable expectation of paying for them; * * * But when one of the formal constituents of legal transactions is wanting, there is no question of recission,—the transaction is void *ab initio,*—and

fraud does not impart to it, against the will of the defrauded party, a validity that it would not have if the want was due to innocent mistakes. The sale being void, and not merely voidable, or, in simpler words, there having been no sale, the delivery to Clementson gave him no power to convey a good title to a bona fide purchaser. He had not even a defective title * * *''.

Holmes, J., in *Rodliff v. Dallinger,* 141 Mass 1, 4 N. E. 805, 55 Am. Rep. 439.

We feel that the charges of fraud are merely surplusage, and may be disregarded. If, as the court found, the transaction was a cash sale and the parties intended that title should not pass until payment was made, and no payment was made, then title to the property did not pass by mere delivery, and it is immaterial what motive Boylen had in giving the drafts, or whether he was actuated by fraud or not.

■ It may be conceded that, if a vendor clothes his vendee with indicia of ownership to the property which is the subject of the transaction, and makes delivery, even if title has not passed he thereby makes it possible for the vendee to convey good title to an innocent purchaser for value and without notice. *Security State Bank v. O'Connell Lumber Co.,* 64 Wash. 506, 117 P. 271; 24 R. C. L., Sales, sec. 665. No indicia of title was given by the plaintiffs or Charles to Boylen, however, and the mere fact that the lambs were left in his possession, under the circumstances, does not estop them from asserting their title even against a bona fide purchaser for value. 24 R. C. L., Sales, sec. 665, note 8.

■ The defendant insists that the contract between Boylen and him is to be interpreted according to the laws of the state of Washington. No doubt that is

true. 17 C. J. S., Contracts, sec. 356, p. 814, note 42; 47 A. L. R., note II, p. 166. We are dealing, however, not with the construction of that contract as between Boylen and the defendant, but with the question of the owner-ship of the lambs which are the subject of that con-tract,—a very different matter. The trial court found that it was the intention of the parties that title to the lambs should not pass until the price had been paid. We are not here concerned with the evidence upon which the court made that finding, but only with the question as to whether or not the findings of the court are sufficient to support the judgment. The findings themselves have the force and effect of a verdict. *McCulloch v. Kollock,* 147 Or. 283, 32 P. (2d) 770; *Morris v. Leach,* 82 Or. 509, 162 P. 253. No bill of exceptions having been brought up, we must assume that the findings are supported by competent evidence.

The defendant contends that the laws of the state of Washington govern the situation, even though the lambs were in Oregon when they were sold to him by Boylen. He says that a state has the sovereign right to regulate the transfer of property within its borders, and, as an abstract proposition of law, this must be conceded. In *Eli Bridge Co. v. Lachman,* 124 Or. 592, 265 P. 435, which is cited by defendant in this connec-tion, it was decided by this court that it was the inten-tion of the parties that the contract in suit should be construed according to the laws of the State of Con-necticut, but the court, in so deciding, made this sig-nificant statement:

"\* \* \* This case is not to be confused with those where the purchaser, without the knowledge or consent of the seller, removes the property from the state where the contract is made. \* \* \*"

*Wilson v. Buchenau,* 43 F. Supp. 272, another case upon which the defendant relies, is distinguishable from the case at bar by the fact that the transaction involved was classified by the court as a voidable sale. The court held:

"Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title."

In the case at bar Boylen did not secure even a voidable title; on the contrary, title was reserved in the vendors until payment of the purchase price.

*Green v. Van Buskirk,* 7 Wall. 139, 19 L. Ed. 109; *Smith v. Eaton,* 36 Me. 298, 58 Am. Dec. 746; *Smith v. McAtee,* 27 Md. 420, 92 Am. Dec. 641; and *Hornthall v. Burwell,* 109 N. C. 10, 13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556, cited by defendant, are all cases affecting personal property which was situated in another state at the time title was transferred. The last mentioned case, although cited by appellant, would seem to be authority for the respondents. The plaintiffs there held a chattel mortgage on certain horses, which were in possession of the mortgagor in North Carolina. The mortgage was duly recorded, both in the county where the property was situated, and also in the county where the mortgagor resided. While the debt was still unpaid, the mortgagor took the horses into Virginia, where they were seized on attachment and sold at the instance of the defendants, who were creditors of the mortgagor. The mortgagee thereupon brought an action in North Carolina against the defendants to recover the debt secured by the mortgage.

The court held that they were entitled to recover, even though the mortgage had not been recorded in Virginia. We quote:

"The principle embodied in the maxim *mobilia sequuntur personam* is generally recognized in all civilized countries, and it follows as a natural consequence, says Story, (Confl. Laws, 383,) that 'the laws of the owner's domicile (or the *lex loci contractus*) should in all cases determine the validity of every transfer, alienation, or disposition made by the owner, whether it be *inter vivos* or be *post mortem.*' The authority of such laws, however, is admitted in other states, not *ex proprio vigore,* but *ex comitate,* and hence it is now very generally held that when they 'clash with and interfere with the rights of the citizens of the countries where the parties to the contract seek to enforce it, as one or the other of them must give way, those prevailing where the relief is sought must have the preference.' Olivier v. Townes, 2 Mart. (N. S. 93; 2 Kent, Comm. 458; Moye v. May, 8 Ired. Eq. 131. * * * This principle, however, has no application to a case like ours, where the mortgage was executed and duly registered according to both the law of the domicile and the law of the *situs.* The property was situated in this state, and the title of the mortgagees perfected here. This being so, we think it quite clear that the removal of the property to another state could not deprive the mortgagees of their rights. * * *"

*Gramm-Bernstein Motor Truck Co. v. Todd,* 121 Wash. 145, 209 P. 3, is cited by appellant to the point that, where no title passed even conditionally, yet the innocent purchaser was protected. The case is not authority for defendant, because there the court states the rule to be that, under a conditional sales contract, the seller might hold the title even as against a person to whom the buyer might sell, who had no knowledge

of the original conditional sale, which is exactly the position taken by the respondents here. Moreover, in the Gramm-Bernstein case, the evidence showed that, over a period of years, it had been the buyer's custom to sell the goods which he had purchased on conditional sales contracts, and thereby obtain the money with which to secure a release of the contracts, and that the seller knew of this custom and practice, and actually knew that the buyer was selling the property involved as his own and afterwards remitting the proceeds to the seller. It was rightly held that such conduct was entirely inconsistent with the idea of retention of title by the seller under a conditional sales contract.

■ The rule which finds support in the modern authorities is that the laws of the state within which personal property is situated govern the validity of a sale of such property. 15 C. J. S., Conflict of Laws, sec. 18, d (1) ; Goodrich, Conflict of Laws, 1927 ed., sec. 147 ; Restatement, Conflict of Laws, sec. 258; Idem, sec. 275.

The familiar rule that, where one of two innocent persons must suffer from the fraud of a third person, the loss must fall upon the person who enabled such third person to commit the fraud, is relied upon by the defendant. That rule would not seem to be applicable here, because, as we have pointed out, fraud is not involved as a material factor herein. A reading of the cases cited by the defendant in this connection shows that they are not in point. For example, in *Linn v. Reid,* 114 Wash. 609, 196 P. 13, an action for claim and delivery, the court held that the plaintiff had voluntarily surrendered his car "with intent to pass title to the wrongdoers, thus giving to them all the indicia of ownership and the apparent right of disposal." In *Long v. McAvoy,* 133 Wash. 472, 233 P. 930, 44 A. L. R. 483, it

was held that one who intrusts another with the indicia of ownership of personalty may be estopped to assert his title as against a bona fide purchaser. In *Woonsocket Rubber Co. v. Loewenberg,* 17 Wash. 29, 48 P. 785, 61 Am. St. Rep. 902, the court, while holding that, by the weight of authority, one who has been induced by fraud to part with his property may disaffirm the sale and reclaim the property from the fraudulent vendee, he may lose this right if, after he discovers the fraud, he treats the purchaser as the owner of the property, and will lose it absolutely if, during the time intervening between the delivery of the goods and the attempted rescission, the goods have been sold to an innocent purchaser for a valuable consideration. *National Mortgage Co. v. King,* 152 Wash. 614, 278 P. 697, holds that, where the buyer of an automobile signed a conditional sales contract in duplicate, but later made payment in full and received a receipted copy, she was the owner of the car as against one subsequently taking transfer of a copy of the contract, without investigation. The doctrine of comparative innocence was applied by the court, and the case is illustrative of the rule placing the burden of the fraud upon that one of two innocent purchasers whose negligence enabled the third person to commit it. The particular circumstances of the case render it inapplicable to the facts of the case at bar. Our case falls more nearly within the rule laid down by *Rodliff v. Dallinger, supra:*

"* * * The sale being void, and not merely voidable, or, in simpler words, there having been no sale, the delivery to Clementson gave him no power to convey a good title to a bona fide purchaser. He had not even a defective title, and his new possession did not enable him to pledge or

mortgage. The consideration in favor of protecting bona fide dealers with persons in possession, in cases like the present, was much urged in Thacher v. Moors, 134 Mass. 156, but did not prevail. Much less can it be allowed to prevail against a legal title without the intervention of statute.''

The defendant suggests that the delivery of the lambs to Boylen was an unconditional appropriation of the goods to the contract. As authority for this, he cites the case of *John Hancock Mutual Life Ins. Co. v. Lewis Realty Co.,* 173 Wash. 444, 23 P. (2d) 572. That case is cited in support of sections of the Washington Uniform Sales law which are identical with sections 71-119 and 71-120, O. C. L. A. The court said:

"The contract here was for the sale of unascertained goods. * * * As the goods arrived in a deliverable state and were required, they were actually delivered. Not only did the deliveries raise the presumption of unconditional appropriation under rule 4 (2), but the facts, to which we have already referred, lead to the same conclusion under rule 4 (1).''

Rule 4 is as follows: (Identical with Rule 4, sec. 71-119, O. C. L. A.)

"Rule 4. (1) Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.

"(2) Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the

buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for * * * in section 5836-20. This presumption is applicable, although by the terms of the contract, the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words 'collect on delivery' or their equivalents.''

Section 5836-20 is, in part, as follows: (Identical with sec. 71-120, O. C. L. A.)

 ''(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer or to a carrier or other bailee for the purpose of transmission to the buyer.''

The right of property in the goods in this case having been reserved by the contract, *John Hancock Mutual Life Ins. Co. v. Lewis Realty Co.*, supra, is not authority for defendant's contention.

 ■ We conceive the rule to be that appropriation of the goods to the contract does not by itself effect a transfer of title. Whether or not title passes depends upon the intention of the parties. 24 R. C. L., Sales, sec. 300.

One case only is cited by the defendant to the point that a buyer must be put on notice in order to defeat his title. That case is *Northwestern Finance Co. v. Russell*, 161 Wash. 389, 297 P. 186. It was decided upon facts indicating that the buyer of a conditional sales contract, covering the purchase, for demonstration

purposes, of an automobile by an automobile dealer's salesman, was guilty of laches in failing to give notice of its claim immediately upon discovering that subsequent purchasers of the car were claiming to own it, and also on failure to record the bill of sale, and on leaving the car in the dealer's possession. As there is no laches involved in the case at bar, this case does not seem to be immediately authoritative.

■ The defendant contends that an innocent purchaser for value takes a good title, and with such general statement we are disposed to agree, but with reservations. The true rule is stated thus by a textwriter:

> "If the owner of chattels intrusts another with the indicia of ownership, he may be estopped to assert his ownership as against a bona fide purchaser for value. (Citing Velsian v. Lewis, 15 Or. 539, 16 P. 631; Beckwith v. Galice Mines Co., 50 Or. 542, 93 P. 453). * * * where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner, they will be protected. Their rights * * * are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the person making the transfer." (Citing McNeil v. New York Tenth Nat. Bank, 46 N. Y. 325, 7 Am. Rep. 341.)
> 24 R. C. L., Sales, sec. 665.

The defendant leans heavily upon the case of *Orillia Lumber Co. v. Chicago, M. & P. S. Ry. Co.*, 84 Wash. 362, 146 P. 850. That case involved a situation wherein the seller negligently clothed the buyer with indicia of

title, and it was held that, in such circumstances, the buyer was enabled to pass title to an innocent purchaser. We quote:

> "The general rule is that, if there is laches, waiver, or estoppel on the part of the seller, a subsequent bona fide purchaser for value acquires good title. We think this must necessarily be the rule. Otherwise a secret agreement between a purchaser and a seller would defeat the title to goods sold in the ordinary course. Of course this cannot be true. The reasonable rule is that where the vendor knows the purchaser is offering the goods for sale, and permits the vendee to sell the goods to an innocent purchaser, who knows nothing of the contract between the vendor and the vendee, the innocent purchaser will acquire good title, even though the goods are not paid for by the vendee upon the original sale. \* \* \*

> "The goods in this case were delivered by the Orillia Lumber Company to the railway company. The Page Lumber Company was named in the bill of lading as the consignee. The Page Lumber Company was also named as the consignor. If the goods had been lost in transit, it is plain that the railway company would have been liable to the Page Lumber Company therefor, because the loading of the lumber in the car and taking the bill of lading in the name of the purchaser constituted a delivery to the purchaser. (Citing cases.)

> "While there is conflict among the authorities upon the question, we think the great weight of authority is to the effect that, where goods are sold upon condition that the price therefor shall be paid upon receipt of the invoice of the goods, the title remains in the seller until the goods are paid for, *unless the original vendor is guilty of laches, or by some act has waived his right, or is estopped from claiming that the sale is one for cash.* \* \* \*"
(Italics ours.)

The case involved, therefore, both laches and delivery of indicia of title, neither of which are present in the instant case.

 It must be conceded that the case of *Michigan Central Railroad Co. v. Phillips,* 60 Ill. 190, which is cited in the Orillia case, is authority for the defendant here. That was a case involving a sale for cash on delivery. The original vendee, as here, failed in business immediately after delivery of the goods, and shipment was made by him as soon as he received them to a bona fide purchaser for value and without notice. The innocent purchaser was held to be protected under the rule that, where one of two innocent purchasers must suffer loss from the fraud of a third, the loss must fall on him who, by his imprudence, enables such third person to commit the fraud. The Washington court in the Orillia case, however, although citing the Illinois case, certainly does not lay down the rule as broadly as does the latter. We think that, before one can transfer title to personal property which he does not own, some principle of estoppel must operate against the true owner. 24 R. C. L., Sales, sec. 662; *Velsian v. Lewis,* supra; 23 R. C. L., Sales, sec. 209.

 The trial court, in the case at bar, found that the plaintiffs and their assignor did not accept Boylen's drafts as payment for the lambs, and the rule is that, in such cases, where the draft is dishonored on due presentation, the seller's right to retake the property is not lost. The court found further that there had been no unreasonable delay on the part of the plaintiffs and their assignor in presenting their drafts for payment. No bill of exceptions being before us, we might presume that the evidence supports the court's finding in this respect. We observe, however, from the find-

ings, that there was a lapse of about five days between the time of delivery of the draft to the plaintiffs and the date of its presentation to the drawee's bank, and a lapse of about three days between the date of the delivery of Charles' draft and the date of its presentation. In this connection it must be remembered that these men were not city businessmen, transacting their business within easy reach of postoffices and banks, but were stockmen on the range. At the time they received the drafts, they were engaged in the management and operation of their sheep in the isolated mountain territory on the summit of the Cascade Mountains in southeastern Oregon. The exigencies of their situation and of their operations, as shown by the findings, were such that the court was justified in finding that they were not guilty of laches or unreasonable delay in the presentation of their drafts.

The leading case in Oregon on the situation presented in the case at bar is *Johnson v. Iankovetz,* 57 Or. 24, 102 P. 799, 110 P. 398, 29 L. R. A. (N. S.) 709. In that case we held that, upon a sale for cash, payment and delivery are concurrent acts, and that, if the price is not paid at the time of delivery of the goods, the seller may immediately reclaim them. We held further that, in a cash sale, where the purchaser does not pay for the goods but sells them to an innocent purchaser for value, no title will pass to such innocent purchaser unless the circumstances show that the original seller, in some manner, waived his right to immediate payment. The facts were very similar to those in the present case. The plaintiff sold certain goods to a person who was a stranger to him, and took the purchaser's check in payment. The purchaser immediately sold the goods to the defendant, who was an innocent purchaser for

value and without notice. The check was dishonored. We held that there was no intentional waiver of payment for the goods, that the delivery was conditional, and that the defendant subpurchaser acquired no title. That is the rule in Oregon, and the law of Oregon is controlling in this case. This court has specifically held, moreover, that the uniform sales act does not affect or change the law as laid down in *Johnson v. Iankovetz, supra. Nugent v. Union Automobile Ins. Co.,* 140 Or. 61, 13 P. (2d) 343. The Iankovetz case is buttressed by the comparatively recent case of *Weyerhaeuser Timber Co. v. First Nat. Bank,* 150 Or. 172, 38 P. (2d) 48, 43 P. (2d) 1078. That case involved a sale of lumber for which payment was to be made in cash "in exchange for documents". The lumber was delivered and an invoice with other documents was delivered to the buyer, which, without making payment, transferred these nonnegotiable documents to an innocent third party, and attempted to sell the lumber to it for value. We held that payment of the purchase price, unless waived, was a condition precedent to the passage of title; that, where no payment is made, or where a check is given which is dishonored, no title passes to the buyer, notwithstanding the fact that he takes possession of the goods, and he cannot convey title even to an innocent purchaser; that the seller, under such circumstances, was entitled to reclaim the lumber or to recover the proceeds thereof, since title had not passed as between the seller and the buyer, or as between the seller and third parties who were in no better position than the buyer.

The action of *indebitatus assumpsit* has been referred to as in the nature of an equitable action. The trial court in this case held that the plaintiffs and

Charles had received no sums whatsoever in payment of the purchase price of the sheep except as set out in Paragraph VII of the stipulation of facts. Paragraph VII recites that the reasonable market value of the 955 head of lambs at the time of the transaction between the defendant and Boylen was $4,794.55, and that plaintiffs and Charles had received from Boylen, as part payment on the whole band of 1,500, the sum of $1,600. Notwithstanding such finding, the court gave judgment against the defendant for the full value of the lambs, or $4,794.55. Applying equitable principles, we feel that the defendant is entitled, *ex aequo et bono,* to credit for the sum of $955, representing a proportionate share of the advance payments made by Boylen to the plaintiffs and their assignor respectively. We arrive at this sum upon the basis of $1.00 a head, which, we gather, was the intended rate of advance payment. This will have the effect of reducing the judgment from $4,794.55 to $3,839.55, and it will be modified accordingly. Const., Art. VII, sec. 3. In all other respects, the judgment is affirmed. In view of such modification, the defendant-appellant will be allowed his costs and disbursements in this court.