## BENJAMIN v. BUELL.

### In re SCHISSEL.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1920.   Rehearing
Denied December 9, 1920.)

#### No. 2793.

1. **Appeal and error** ⊜⇒753(2)—**Filing of assignment of errors not essential to jurisdiction.**

   Under rule 11 of the Circuit Court of Appeals, Seventh Circuit (150 Fed. c, 79 C. C. A. c), requiring the filing of an assignment of errors within six months, but authorizing the court to notice errors not assigned, the filing of assignments of error is not essential to the jurisdiction of the Circuit Court of Appeals, and failure to file such assignments does not authorize a dismissal of the appeal.

2. **Bankruptcy** ⊜⇒303(3)—**Evidence held to support finding creditor knew of insolvency.**

   Evidence that the bankrupt had for some considerable time been insolvent, and that a creditor to whom a payment was made within four months of bankruptcy had had a long course of dealings with the bankrupt, was frequently in his place of business, and had opportunity for intimate knowledge of his affairs, *held* sufficient to sustain a finding of the chancellor, who heard and saw the witnesses, that the creditor knew of the bankrupt's insolvency when the payment was made to him..

3. **Bankruptcy** ⊜⇒165(2)—**Evidence held to show an agreement goods were to be sold for creditor's account.**

   Evidence that a creditor to whom the bankrupt had been largely indebted advanced practically the entire purchase price of a large stock of goods, and supervised its sale by the bankrupt, rejecting certain sales made, *held* to sustain his claim that he did not loan the money to the bankrupt for the purchase of the goods, but that he purchased the goods himself under an arrangement whereby the bankrupt was to sell them and divide the profits, so that the value of the goods taken by the creditor after bankruptcy was not a preference.

4. **Bankruptcy** ⊜⇒140(3)—**Appearance of credit to bankrupt immaterial, in absence of proof credit was given.**

   In proceedings to require a creditor to repay the value of goods which he claimed to have purchased and allowed the bankrupt to sell for his account, the trustee cannot rely on the appearance of credit given to the bankrupt by possession of the goods to defeat the creditor's title thereto, where there was no evidence that any one had extended credit to the bankrupt on the faith of such appearance.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill in equity by Edwin B. Buell, trustee in bankruptcy of the estate of Sam Schissel, bankrupt, against Louis Benjamin, to require repayment of alleged preferences. Decree for complainant, and defendant appeals. Motion to dismiss appeal denied, decree modified, and cause remanded.

Bernard J. Brown, of Chicago, Ill., for appellant.

Fred E. Newton, of Chicago, Ill., for appellee.

Before ALSCHULER and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge.   [1] The appeal herein was prayed and allowed and bond filed within due time, but assignment of er-

rors was not filed for more than six months after entry of decree. Appellee moved to dismiss the appeal on the ground that under rule 11 of this court (150 Fed. c, 79 C. C. A. c) the filing of the assignment of errors is jurisdictional, and unless filed within the statutory six months there was properly no appeal. We think the rule itself negatives such conclusion, in that it provides that under certain circumstances the court may notice errors not assigned at all, and hence in its discretion may consider an appeal even without assignment of errors, thus clearly indicating that the provisions of the rule respecting assignment of errors are not jurisdictional. In Hultberg v. Anderson, 203 Fed. 853, 122 C. C. A. 171, this court held that, notwithstanding the rule requiring assignment of errors to be first filed, prior filing was not jurisdictional, and failing to so file did not vitiate an appeal otherwise properly taken. The motion to dismiss the appeal is denied.

The appeal is from a decree in equity requiring appellant to pay to the trustee of the bankrupt estate of Sam Schissel $6,641 as an unlawful preference to appellant. The bill of complaint charged that appellant, knowing the bankrupt to be insolvent, within four months of the bankruptcy was paid by bankrupt $1,400 on a prior indebtedness of the bankrupt to appellant, and that very shortly before the bankruptcy, in order to secure to himself the payment of a considerable balance then due from the bankrupt to appellant, and to hinder and defraud the other creditors of the bankrupt, there was turned over to appellant about $5,000 worth of the bankrupt's goods, which were stored away and fraudulently concealed from the trustee in bankruptcy.

It appears from undisputed evidence that for a considerable time prior to the bankruptcy appellant had been advancing funds to appellee, and that about the middle of September bankrupt owed appellant in the neighborhood of $3,000; that about that time the bankrupt undertook to purchase about $5,500 of woolens from the firm of Cohen & Sons, and paid $100 thereon. Unable to obtain from Cohen & Sons credit for the goods, he made an arrangement with appellant, whereby appellant would settle with Cohen for the purchase price of the goods, and the bankrupt would sell them, and the profits on the sale would be divided equally between appellant and the bankrupt. Appellant settled for the goods, about half in cash and half with his note. Shortly afterwards appellant, claiming he had pressing need for money, urged the bankrupt to let him have some, and was given about $1,400, which the bankrupt testified was not intended to be payment on the indebtedness, but was agreed by appellant to be returned to the bankrupt in very short time, which agreement, however, is denied by appellant. It seems that a few weeks later, and a very short time before the bankruptcy, bankrupt demanded that appellant return the amount so paid as per alleged agreement. Appellant not only refused to return the $1,400, but insisted upon closing out the Cohen goods transaction, and he actually sold the remaining goods of that purchase to one Lew for about $5,000, and Lew took possession of them and stored them in a warehouse, paying appellant therefor something less than the invoice price of the goods, and appellant keeping the money.

As to whether the $1,400 was or was not to be repaid to appellant,

the evidence is very contradictory. But whether or not it was so agreed, the payment actually went in reduction of the indebtedness theretofore due from the bankrupt to appellant.

[2] That the bankrupt was at that time, and for a very considerable time before, insolvent, is, we believe, sufficiently shown by the evidence. Whether appellant knew, or had cause to believe, that the bankrupt was then insolvent, and that the payment would constitute a preference, is dependent upon conflicting evidence, and facts and circumstances which the evidence disclosed. From appellant's long course of dealings with the bankrupt, and his financial interest in him through being so long his creditor, coupled with his frequent presence at bankrupt's place of business, and conversations concerning his affairs, and opportunity for intimate knowledge of them, we cannot say that the chancellor, who heard and saw the witnesses, was not justified in the conclusion he must of necessity have reached, to support the decree, that at and before time of the payment appellant was aware of the bankrupt's insolvency, and of his very desperate financial straits, and of the large excess of liabilities over assets which the undisputed evidence seems to establish. This being so, so much of the decree as is predicated upon this $1,400 payment to appellant by the bankrupt is justified and should remain undisturbed.

[3] A different situation is presented with reference to so much of the decree as rests upon the transaction with reference to the Cohen goods. It may be assumed that when, a day or two before the bankruptcy in November, appellant took and sold these goods, and took to himself the proceeds thereof, he knew or had reason to believe the bankrupt was insolvent. But there is no less reason to believe that he had the same knowledge when, some weeks before, the deal for the Cohen goods was made. Under the circumstances it would be a strong tax upon credulity to believe that at that time, with knowledge of the insolvency, and the bankrupt then already in his debt about $3,000, he would deliberately enter into an arrangement whereby he became a general creditor for upwards of $5,500 more.

It is not contended that there is any want of good faith in the contention that appellant advanced practically the entire consideration of the Cohen purchase, and, this fact being conceded, it adds verity to appellant's claim that the Cohen goods were not in fact to become the property of the bankrupt, but he was merely to handle them, turning them into cash, repaying appellant his advance, and dividing with appellant whatever profit was realized. The conduct of the parties seems to indicate that this was their understanding. Two instances appear, where, while the goods were in bankrupt's possession, appellant vetoed sales of some of them made by bankrupt. All this, as well as the logic of the situation, would indicate that, respecting the consideration paid by appellant for the Cohen goods, the relation between bankrupt and appellant was not that of debtor and creditor, but that there was a trust relation, whereunder these goods were, as between the bankrupt and appellant, to be subject to a prior charge in appellant's favor for the amount of his advances, and that appellant's sale of them and application of the proceeds upon his advance of the purchase of such

goods, was not a preferential payment to appellant. Under the practically undisputed evidence, the action of appellant as to these goods is not properly subject to complaint by the trustee or the creditors of the bankrupt.

[4] There is no merit in the suggestion by appellee's counsel that appellant had no right to permit the bankrupt to possess these goods, and thus possibly to lend appearance of his solvency, and thereby improve his credit, in view of the fact that there is no evidence that credit was extended the bankrupt on the faith of such appearance.

The decree should be modified, by reducing the amount of the preferential payment as found and ordered paid by appellant, by so much thereof as is represented by the transaction in regard to what is above termed the Cohen goods, and limiting the recovery against appellant to the said $1,400 preferential payment to him.

The cause is remanded, with direction to modify the decree in accordance with the foregoing views.