### In re MARLEY–MORSE CO.

### WILSON v. KANTER et al.

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921.)

#### No. 2871.

Bankruptcy ⊕═165(1)—Payments for current supplies held not preferential.

Payments for current supplies by a mail order house in precarious condition, but expecting to avoid bankruptcy, to a wholesaler, in accordance with creditors' agreement that claims for current supplies furnished during the term of the agreement should be preferred, *held* not preferential.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of Marley-Morse Company, a copartnership, bankrupt.

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The claim of H. L. Kanter and another, copartners, was allowed, and Henry L. Wilson, trustee of the bankrupt estate, appeals. Affirmed.

Lloyd C. Whitman, of Chicago, Ill., for appellant.
Henry S. Blum, of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge. The controversy is over the allowance to appellees of a general claim against the bankrupt estate for $1,408.18; the asserted impropriety of its allowance being predicated on the contention of unlawful preferential payments to appellees. Upon this issue the referee, after hearing the evidence, found that sufficient proof did not appear to warrant the conclusion that bankrupt was insolvent at the time of the payments. But apart from this issue the record discloses facts which unquestionably justified the allowance of appellees' claim.

Bankrupt was in the mail order grocery business. In 1917 it extensively advertised to sell sugar at considerably lower than current prices, as part of a combination order comprising also other goods. Many orders were received, but in November, 1917, the federal authorities controlling the distribution of sugar ordered discontinuance of such advertising and sales. The business immediately dropped off, although for a time orders with cash were received, which bankrupt could not then fill. In February its 10 largest creditors, with aggregate claims of about $14,000, of which appellee held $764, entered into agreement with bankrupt for a three months' extension of their claims, and the appointment of a creditors' committee of three, of which a member of appellees' firm was one, who were to exercise a general supervision over the business, and to whom reports were to be made, and it was agreed that, for any goods sold to the bankrupt by any one of these creditors during the term of the agreement, there should be a preferred claim against the assets for the amount thereof.

Appellees were in the wholesale grocery business, and had all along been selling goods to appellant; the sales being frequent and the most usual terms being 30 days. Upon the agreement being made, it continued to sell as theretofore, the sales being almost daily, and sometimes several items in a day, and upon such sales payments were made with more or less regularity, sometimes in cash and sometimes through a return of goods. This course of dealing continued into the middle or latter part of March.

It is true that one of the appellees' firm was related to a member of the bankrupt firm; but the record, far from showing any advantage to have been taken by reason of the fact that one of its partners was a member of the creditors' committee, discloses that the balance due the firm when the contract was made, instead of being reduced, became considerably increased. The record fairly warrants the conclusion that, in thus supplying merchandise after the creditors' agreement was made, it was upon the faith, not only that the concern would thus be saved from bankruptcy, but that such merchandise should not, upon being supplied, at once go to enhance the estate for the benefit of other

275 F.—53

creditors, but that, out of the proceeds of sales in due course of business, the merchandise thus supplied would be paid for. Such payments, under the indicated facts, are not preferential within the meaning of the law, and do not interfere with the allowance as a general claim of the entire debt, exceeding as it does the indebtedness to this creditor at the time the agreement was made. Benjamin v. Buell (C. C. A.) 268 Fed. 792; Ill. Parlor Frame Co. v. Goldman, 257 Fed. 300, 168 C. C. A. 384; Lake View State Bank v. Jones, 242 Fed. 821, 155 C. C. A. 409.

The order of the District Court is affirmed.