James C. BOOKEY, Sr., Appellant,

v.

Cleo P. KING, Trustee in Bankruptcy of James C. Bookey, Sr., Bankrupt, Appellee.

No. 14943.

United States Court of Appeals Ninth Circuit.

Aug. 27, 1956.

Guy E. Dunning, William A. Bowles, Seattle, Wash., for appellant.

James H. Madison, Wallace Aiken, Howe, Davis, Riese & Aiken, Seattle, Wash., for appellee.

Before HEALY, LEMMON and FEE, Circuit Judges.

LEMMON, Circuit Judge.

While his son and sole business partner was facing an involuntary petition in bankruptcy filed against the firm, the appellant was on an extended trip in the United States and Mexico—gambling in San Francisco, Los Angeles, and Reno, and being "usually * * * pretty well teed up and * * * never * * * very clear on just what [he] was doing".

Exactly eight months after he and the firm were adjudged bankrupts, the appellant filed a petition for review of the adjudication. As we shall see, that filing was more than seven and one-half months too late.

■ In a very recent case, we had occasion to advert to the well-established principle that a court of bankruptcy is a court of equity. Lines v. Falstaff Brewing Co., 9 Cir., 233 F.2d 927. On the ground of laches, chancery would deny relief to the appellant, just as a court of law must withhold its aid for the statutory reasons hereinafter discussed.

1. Statement of the Case.

On May 6, 1954, a creditor's petition of involuntary bankruptcy was filed by C. A. Swanson & Sons, hereinafter Swanson, a Nebraska corporation, with an office in Seattle, Washington, against J. C. Bookey Supply, a partnership; James C. Bookey, Sr., and James C. Bookey, Jr., the partners, individually, hereafter frequently referred to as "Senior" and "Junior", respectively.

The petition alleged that, to the best of the petitioner's knowledge, information, and belief, the number of creditors of the partnership and of the individual partners was less than twelve.

On the same day, the Clerk of the Court below issued a subpœna to Senior. The Marshal was unable to serve that subpœna on Senior personally, since the latter had moved out of the State of Washington in March or April, 1954. A subpœna was served on Junior and the partnership by personal service on Junior. The subpœnas required the partners to appear and plead on or before May 17, 1954.

On May 11, 1954, a general order of reference was made by the District Judge, naming as referee Van C. Griffin, one of the Referees in Bankruptcy of the Court below.

In compliance with a petition filed by Swanson on May 21, 1954, the Referee made an order extending the return date of the subpœna to Senior to May 27, 1954, requiring the latter to appear and plead on or before June 7, 1954, and ordering Swanson to give notice to Senior by causing publication of that order to be made once, on May 27, 1954, in The Daily Journal of Commerce, a daily newspaper of Seattle. The order was duly published.

On the same day that the order was published, the Klock Produce Company and the Washington Export & Provision Company, both Washington corporations, filed a petition joining in Swanson's creditor's petition.

On June 10, 1954, a motion to quash the service of summons by publication was filed by Senior and his wife, through their attorney, Guy E. Dunning, and was denied by the Referee. On the same day, Senior and his wife moved for leave to answer the petition, and Swanson, through its attorneys, moved for an order adjudging the alleged bankrupt Senior to be in default.

On June 21, 1954, the Referee made an order of default, based upon a motion and affidavit of the three creditors. The

order recited that Senior individually had been "duly, legally and properly served with the subpœna herein, pursuant to the order of this court, by publication thereof in The Daily Journal of Commerce on May 27, 1954, and that [Senior] filed an appearance and moved this court for leave to answer the petition on June 10, 1954, and it further appearing to the court that [Senior] has neither answered, demurred to nor pleaded against the creditors' petition; and it appearing that the alleged bankrupt [the partnership, supra] was * * * properly served with the subpœna herein, but the service thereof by the United States Marshal [was made] by serving a copy personally upon one of the partners, [Junior], and it further appearing * * * that the said partnership has neither answered, demurred to nor pleaded against the creditors' petition; and it appearing that no notice of the hearing on said motion need be given * * *."

On the same day, the Referee handed down an adjudication of bankruptcy against Senior and the partnership.

On October 18, 1954, Senior was called to the witness stand by counsel for the appellee. Before Senior was sworn, his counsel made the following statement:

"Your Honor, before he is put on the witness stand we want to call your attention to the fact that this is the first time we have been authorized to represent this man and at this time we want to present to the Court a special appearance on behalf of this gentleman and who is now and has been for a long period of time, consisting of months, a resident of California. The purpose is to obtain a vacation of the adjudication of this man as a bankrupt by this Court; the adjudication which has been entered has been entered without substantial evidence of any kind, without proper and legal service upon this gentleman and we want to make that plain to the Court that we are appearing specially for a man who came here only in com-

pliance with a warrant to testify in this Court. He is here for no other purpose and has come from his home in California up here for that purpose * * *. We will ask that the adjudication be vacated."

The Referee refused to grant the request of Senior's counsel, and permitted counsel for the appellee to proceed with the examination.

Senior was examined again on October 26, 1954.

On February 21, 1955, Senior filed a petition for review of his adjudication as a bankrupt.

On July 22, 1955, the District Judge filed a memorandum decision affirming the Referee's findings of fact, conclusions of law, and turnover order.

On July 27, 1955, the District Judge dismissed the appellant's petition for review, on the ground that the petition had not been filed within ten days after the referee's order, as required by 11 U.S.C.A. § 67, sub. c, infra.

On August 22, 1955, the appellant filed in the District Court a notice of appeal from the order of default of June 21, 1954; from the judgment "and order" adjudicating him a bankrupt, of the same date; from the denial of Senior's motion in open court, made on October 18, 1954, supra, to vacate the adjudication of June 21, 1954; and from the "order or judgment" of July 27, 1955, dismissing Senior's petition for review of the adjudication of bankruptcy against him.

In making his notice of appeal, Senior asserted that he "intends to and does hereby keep and maintain his special appearance in the said action upon the grounds and reason that he insists that the said court does not have and has not at any time had jurisdiction of him in the said action".

2. The Petition for Review of the Referee's Order Was Not Filed Within the Prescribed Ten Days After the Entry Thereof.

As we have seen, the order of adjudication of Senior as a bankrupt was filed by the Referee on June 21, 1954. The petition for review was filed by Senior on February 21, 1955—exactly eight months later, or seven months and twenty days too late.

Section 67 sub. c of 11 U.S.C.A. reads in part as follows:

"A person aggrieved by an order of a referee may, within ten days after the entry thereof, or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing."

█ Filing within this ten-day period is imperative. In 8 Remington on Bankruptcy, Sixth Edition [1955], § 3399, pages 290–291, we find the following unequivocal language:

"A petition to review in accordance with § 39(c) of the Act [11 U.S.C.A. § 67(c)] is the exclusive method of insisting upon review of a referee's order, although, as hereinafter more particularly shown, the judge has power to act on his own motion if he sees fit to do so. There is no right simply to apply to the judge to dismiss proceedings which the referee has ruled on. The entire theory of bankruptcy administration sets the referee up as a conclusively functioning entity, unless his determinations are brought up for review in the specified manner, or the judge sees fit, on his own initiative, to interfere."

In California State Board of Equalization v. Sampsell, 9 Cir., 1952, 196 F.2d 252, 253–254, we said:

"The orderly and duly provided manner and method of proceeding further when a person is aggrieved by an order of a referee is prescribed by section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, whereby a petition for review to the district court is filed with the referee. After the review has

been adjudicated by the district court, the dissatisfied party may appeal to this court. We are of the opinion that the review procedure set out in the Bankruptcy Act is exclusive, and cannot be by-passed by the method adopted in this case. [Cases cited.]"[1]

In his reply brief, Senior seeks to explain his delay in filing his petition for review by saying:

"As to the fact that the petition for review was not filed until eight months after the entry of the order of adjudication, this is accounted for by the fact that appellant was out of the state and his whereabouts unknown," etc.

It is difficult to understand how the appellant can contend that "his whereabouts [were] unknown" during the entire eight-month period between the entry of the order of adjudication and the filing of his petition for review. The order of adjudication was made on June 21, 1954. On October 18, 1954, Senior made what his counsel claims was a "special appearance" and testified at some length. This was less than *four* months after the adjudication. How can counsel contend that Senior's "whereabouts were unknown" at least *in October, 1954?* What happened between October, 1954, and February 21, 1955, that made Senior's whereabouts better known than they were on the former date?

In his testimony of October, 1954, Senior stated that he met his son in Rockaway Beach, Oregon, on Labor Day, 1954. This developed into quite a family reunion. Present were "Joe Bookey, his wife, his daughter; Vincent Bookey, his wife, his son, his daughter; J. C. Bookey, Jr., and his four sons." A moment later, Senior added that Junior's wife was with Junior.

Yet when Senior was asked whether any of his children, including Junior, "made any mention * * * of the

bankruptcy proceedings whatsoever", Senior replied:

"No, it was purely a family visit."

When it is remembered that Junior was not only Senior's son but also *his partner*, it is stretching credulity too far to believe that no mention of the bankruptcy was made during the two-day visit, or that Senior first found out about it when he got back to Seattle.

Senior testified that he had ceased to be a partner on January 1 of that year. But there was no instrument in writing to dissolve the firm, or no written accounting. Senior testified that he simply "gave Jim * * * around $21,000 to pay whatever bills he might have off * * * because I wanted to go to California."

And with that, the senior partner started out on his North American junket: "Oh, gee, I was having a good time."

**3. In Any Event, the Bankruptcy Court Had Jurisdiction of the Creditors' Petition and Followed the Proper Procedure in Adjudicating the Appellant a Bankrupt.**

(a) *An Allegation of Insolvency as of the Time When the Petition is Filed Is No Longer Necessary.*

Senior's briefs devote much space to the argument that the creditors' petition is defective because it fails to allege his insolvency as of the time at which it was filed.

Such an allegation is no longer indispensable. In 1 Remington on Bankruptcy, § 65, pages 118–119, Fifth Edition, 1950, we find the following:

"*Insolvency.*—Insolvency likewise, *as the act is now phrased,* is not not [now] an indispensable prerequisite to involuntary bankruptcy. The Act does not mention it in connection with who may be adjudged a bankrupt." [Emphasis supplied.]

Form 5, Title 11 U.S.C.A. following § 53, does not contain an allegation of the debtor's insolvency as of the time when the petition is filed.

1. See also In the Matter of F. P. Newport Corporation, D.C.Cal.1955, 137 F.Supp. 58, 59–60

Section 21 sub. b of 11 U.S.C.A. which embodied § 3 of the Bankruptcy Act as it had stood since 1903, contained the following opening sentence:

"(b) A petition may be filed against a person *who is insolvent* and who has committed an act of bankruptcy within four months after the commission of such act." [Emphasis supplied.]

The same sentence in its present form reads:

"(b) A petition may be filed against a person within four months after the commission of an act of bankruptcy."

The omission of the clause "who is insolvent" is significant.

Subsection c of the same section places the burden of alleging and proving *solvency* upon the alleged bankrupt, as *a matter of defense:*

"(c) It shall be a complete *defense* to any proceedings in bankruptcy instituted under the first subdivision of this section *to allege and prove* that the party proceeded against was not insolvent as defined in this title at the time of the filing the petition against him, and if solvency at such date *is proved by the alleged bankrupt* the proceedings shall be dismissed, *and under said subdivision one the burden of proving solvency shall be on the alleged bankrupt.*" [Emphasis supplied.]

(b) *The Involuntary Petition in Bankruptcy Was Not Invalid Simply Because It Was Originally Signed by Only One Creditor.*

"Another flagrant and fatal defect" complained of by the appellant "is that the involuntary petition in bankruptcy was filed by one and only one alleged creditor, namely, C. A. Swanson & Sons * * *."

As we have seen, on May 27, 1954, six days after the Referee had made an order extending the return time of the subpœna on Senior requiring the latter to appear and plead, and ordering Swanson to give Senior notice by publication, supra, two other creditors filed a petition joining with Swanson.

■ This subsequent joinder of the two additional creditors satisfied the requirements of the Bankruptcy Act. Section 95, sub. d of 11 U.S.C.A. reads as follows:

"(d) If it be averred in the petition that the creditors of the bankrupt, computed as provided in subdivision e of this section, are less than twelve in number, and less than three creditors have joined as petitioners therein, and the answer avers the existence of a larger number of creditors, there shall be filed with the answer a list under oath of all the creditors, with their addresses and a brief statement of the nature of their claims and the amounts thereof, and thereupon the court shall cause all such creditors to be notified of the pendency of such petition and shall delay the hearing upon such petition for a reasonable time, to the end that the parties in interest shall have an opportunity to be heard. If upon such hearing it shall appear that a sufficient number of qualified creditors have joined in such petition *or, if prior to or during such hearing,* a sufficient number of qualified creditors shall join therein, the case may be proceeded with, but otherwise it shall be dismissed." [Emphasis supplied.]

From the foregoing, it will be seen that there is no merit to Senior's contention on this point.

(c) *An Allegation That Senior Did Not Receive Value for the Transfer of the Property Is Not Essential.*

The appellant complains "that there is no allegation in the petition in connection with the * * * three sales by the appellant, that he did not receive value for the transfer of the property to the purchasers".

■ While there may be some probative value in the failure to receive consideration for the property trans-

ferred, such an allegation is not vital to the sufficiency of the pleading under § 21, sub. a. In 1 Remington on Bankruptcy, Fifth Edition, 1950, § 125, page 208, we find the following:

"§ 125.—*Adequacy or inadequacy of consideration as test.*—Adequacy or inadequacy of consideration for the transfer is not a conclusive test. Intent to hinder, delay or defraud may exist and the transfer be voidable as to creditors even though full consideration was paid."

In Coder v. Arts, 1909, 213 U.S. 223, 242, 29 S.Ct. 436, 443, 53 L.Ed. 772, the Court said:

" * * * it makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying, or defrauding creditors."

(d) *Service of the Subpœna Upon Senior by Publication Was Sufficient to Give the Court Jurisdiction over His Person.*

The appellant complains that "the attempt to obtain service of the subpœna upon [him] by publication, including the order directing service of the subpœna by publication and the publication of said order were a violation of due process of law and contrary to the laws of the United States and the Bankruptcy Act, as amended."

The Bankruptcy Act authorizes the type of service that was had upon Senior. Section 41(a) of 11 U.S.C.A. reads in part as follows:

" * * * in case personal service cannot be made within the time allowed, then notice shall be given by publication in the same manner as provided by law for notice by publication in suits to enforce a legal or equitable lien in courts of the United States, except that, unless the court shall otherwise direct, the order shall be published only once and the return day shall be five days after such publication."

 The service that was had upon Senior was adequate to give the District Court jurisdiction over him.

4. Conclusion

The substituted service that was had upon the appellant was sufficient to bring him within the jurisdiction of the bankruptcy court.

Statutory law bars the appellant from relief. But even if equity had the power to interfere in this case, the chancellor might well be persuaded to stay his hand by the appellant's laches and by his international splurge of riotous living while his son and junior partner was back home struggling to keep their firm from bankruptcy.

The order of the District Court dismissing the appellant's petition for review of his adjudication as a bankrupt, is affirmed.