In the Matter of Raymond Chester
STEWART, Bankrupt.
Socony Mobil Oil Company, Inc., a New York corporation, Petitioner.
No. B–54402.

United States District Court
D. Oregon.
June 17, 1964.

3. The "Blackwall formula", Gilmore and Black, The Law of Admiralty, (1957), p. 461.

John B. Leahy, Eugene, Or., for trustee.

Gilbert Sussman, Portland, Or., for petitioner.

KILKENNY, District Judge.

Socony seeks a review of the order of the referee in bankruptcy holding against petitioner on a claim it had presented for allowance.

The facts are not in serious dispute. For many years the bankrupt operated a service station in Eugene and sold petitioner's products. In early October, 1960, the bankrupt was unable to pay petitioner for the last load of gasoline and at that time petitioner learned of the bankrupt's insolvency. Thereupon, they agreed on an arrangement whereby two loads of gasoline would be delivered to bankrupt on credit. Before an additional load was delivered, the parties agreed that bankrupt would pay for the load delivered before the last load. Each load had a value of approximately $2,500.00. The adjudication in bankruptcy occurred on September 29, 1961. In the four months preceding that date, petitioner delivered six loads of gasoline to the bankrupt, the bankrupt, pursuant to said agreement, making a payment

prior to each delivery. The sum total of the six payments was $13,148.40. Bankrupt's indebtedness to petitioner in October, 1960, was $4,453.32 and on the date of adjudication is was $4,419.48. Petitioner filed a claim, as a general creditor, for the last mentioned amount. The trustee filed formal objection to the claim and entered a counterclaim for $13,148.40, the amount of the final six payments within the four month period, on the theory that such payments were voidable preferences under §§ 57, sub. g and 60, sub. a of the Bankruptcy Act. The referee found that the payments within the four month period were for antecedent debts and that if Socony was allowed to retain the challenged payments, it would obtain a greater percentage of its debt than other creditors of the same class. The referee concluded that the trustee should have judgment against Socony for $8,980.73, this sum being the difference between the alleged preferential payments and the amount of the claimant's original claim, less $244.44, which was deducted in connection with certain credit cards in the possession of the bankrupt. The trustee seeks a review on the allowance of the set-off in the sum of $4,167.00.

To be invoked, at the outset, is the general rule that a reviewing court is required to accept and uphold the referee's findings, unless they are clearly erroneous. Costello v. Fazio, 256 F.2d 903 (9th Cir. 1958); Heath v. Helmick, 173 F.2d 157 (9th Cir. 1949); Tepper v. Chichester, 285 F.2d 309 (9th Cir. 1961). The rule, however, has no application to a case, such as here, where there is no dispute as to the facts, since in such a case the reviewing court is as well equipped as the referee to arrive at a proper conclusion. Costello v. Fazio, supra; Carr v. Southern Pacific Co., 128 F.2d 764 (9th Cir. 1942); Tepper v. Chichester, supra. The rule stated is of particular significance where it appears that the referee has made a clear mistake in applying the law. First National Bank of Portland v. Dudley, 231 F.2d 396 (9th Cir. 1956); Kowalsky v.

American Employers Insurance Co., 90 F.2d 476 (6th Cir. 1937). Questions of the nature, effect and validity of a transfer under § 60, sub. a(1), 11 U.S.C. § 96, sub. a, are controlled by state standards and state law governs. McKenzie v. Irving Trust Co., 323 U.S. 365, 370, 65 S.Ct. 405, 89 L.Ed. 305; Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155, 156, 64 S.Ct. 474, 88 L.Ed. 635; Eberly v. Dudley, 314 F.2d 8, 12 (9th Cir. 1962).

The vital findings of the referee, supported by the undisputed record, follow:

\* \* \* \* \*

"Factually, the testimony indicated that the debtor in October, 1960 was in financial difficulty. A contributing factor was a gasoline price war which worked a hardship on the service station operated by the debtor under lease with Socony for sale of Socony products. Socony had before this time in practice delivered a load of gasoline on credit which was to be paid for by the debtor at or before delivery of the next load. On or about October 5, 1960, debtor was in need of gasoline and unable to pay for the last load to get another. Socony representatives agreed to extend his credit limit to 2 loads of gasoline and before delivery of additional gasoline, payment for the first of the 2 unpaid loads was required. Load values approximated $2,500.00, more or less. \* \* \* "

\* \* \* \* \* \*

For that matter, the undisputed record shows that the October agreement required the debtor to deliver to Socony's dispatcher's office full payment for load one before load three would be dispatched. This procedure was faithfully adhered to by the parties from October 5, 1960, to the date of adjudication on September 29, 1961, the last load being delivered a few days prior to the adjudication.

The findings of the referee and the undisputed evidence clearly established

that each load of gasoline, delivered after October 5, 1960, was delivered on condition that Socony be paid in cash for the first of the two unpaid loads. This was a more cautious and protective arrangement than would be one based on the widely used method of cash on delivery. The admitted arrangement required the payment of cash before delivery, rather than on delivery.

Both the statutory and the decisional law of the State of Oregon recognize and enforce sales of property on condition. ORS 75.200.[1] Keegan v. Lenzie, 171 Or. 194, 212, 213, 135 P.2d 717; Mogul Transportation Co. v. Larison, 181 Or. 252, 181 P.2d 139. On this type of an agreement title does not pass to the vendee until the condition is fulfilled by making the payment. Mogul Transportation Co. v. Larison, supra, p. 259, 260, 181 P.2d 139. What constitutes a preferential transfer must be determined by federal, rather than state law. Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.39. United Pacific Insurance Company v. First National Bank of Oregon, D.C., 222 F.Supp. 243, 247. For all practical purposes the bankrupt was paying for each load before it was delivered, although the payment was credited, under the agreement, to the first of the previous two deliveries.

The conditional credit arrangement, here before the court, is a far cry from the customary open account credit arrangement which was the subject of discussion in practically all of the cases cited by the referee and employed by opposing counsel. The rule, as stated in the Oregon cases, includes a circumstance where payment is made by check, and payment never materializes by reason of dishonor of that instrument. Applying that rule to the agreement in the present case, Socony could have claimed title and recovered the gasoline after each delivery, if the payment check was dishonored.

In substance, Socony said to the bankrupt: "You pay me a specific sum of money before I deliver to you this load of gasoline. In turn, the company will apply that money toward the payment of your debt for the first of the previous two loads." That this arrangement did not enable Socony to obtain a greater percentage of its debts than some other creditor of the same class, is clearly demonstrated by the fact that bankrupt. was indebted to Socony at the time of the bankruptcy, in substantially the same amount it was indebted at the time of making the agreement.

To apply § 60, sub. a (1) and (2) to a factual background, comparable to the one here presented, would create chaos in that vast area of business relationships where the creditor has knowledge of the debtor's difficulty, but desires to assist in solving the problems by going along with the debtor on an arrangement similar to ours. Anyone, who has had even the slightest contact with the business world, knows that such an arrangement is not unusual and that a plan such as that, time after time, assists the debtor in putting his house in order, paying all creditors and making a success of his own venture. To treat such a transaction as a preference within the meaning of the bankruptcy act would be nothing short of placing a premium, or a brand of approval, on the actions of those creditors who do not attempt to assist the debtor, but on the other hand attach the property and thus force the debtor out of business.

Aside from my conclusions on the legal effect of the admitted agreement, I incline toward Socony's hypothesis on the application of the so-called "Net-Result Rule" as stated in Yaple v. Dahl-Millikan Grocery Co., 193 U.S. 526, 24 S.Ct. 552, 48 L.Ed. 776; Joseph Wild & Co. v. Provident Trust Co., 214 U.S. 292, 29 S.Ct. 619, 53 L.Ed. 1003 (1909); In re Mayo Contracting Co., 157 F. 469 (D.C.Mass. 1907); In re Marley-Morse Co., 275 F. 832 (7th Cir. 1921); Willcox v. Goess, 92 F.2d 8 (2d Cir. 1937). Although some of these decisions are pre-

1. Oregon Revised Statutes.

mised on lack of knowledge of insolvency of the bankrupt at the time the credit was extended, others apply the rule even in the presence of such knowledge. Simply stated, the net result rule applies to payments on a running account, within the four month period, where new sales succeed payments and the net result is to increase the value of the estate. Such payments do not constitute preferential transfers within the meaning of § 60, sub. a. Jaquith v. Alden, 189 U.S. 78, 83, 23 S.Ct. 649, 47 L.Ed. 717 (1903).

The referee thought that Campanella, et al. v. Liebowitz, 3 Cir., 103 F.2d 252 (1939) should control. I am not sure I understand the principle on which Judge Davis decided this case. Although he was discussing a problem which was presented under § 60, subs. a and b of the Act, in holding that Yaple v. Dahl-Millikan Grocery Co., supra, was no longer the law, he turned to an analysis of an amendment to § 57, sub. g. How the 1903 amendment of the latter could vary, change or supplant the decision in Yaple, is beyond my comprehension. Besides that, the Judge's remarks on the effect of the 1903 amendment and on payments received on an open account were entirely unnecessary. Before the court was a simple case of one sale and one payment. The decision in Campanella may be sound on its facts, but beyond those facts it should not be used as a pattern for decision.

The equities are with Socony, the creditor who attempted to rescue the bankrupt. Courts of bankruptcy are essentially courts of equity, and the proceedings are inherently in equity. Pepper v. Litton, 308 U.S. 295, 304, 60 S. Ct. 238, 84 L.Ed. 281; United States National Bank in Johnstown v. Chase National Bank, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320; Bookey v. King, 236 F.2d 871 (9th Cir. 1956); Hull v. Powell, 309 F.2d 3 (9th Cir. 1962). An employment of equitable jurisprudence, in accordance with applicable law, requires a reversal.

I do not reach the question of the applicability of § 60, sub. c, 11 U.S.C. § 96, sub. c.

The judgment and findings of the referee are set aside and the cause is remanded to the bankruptcy court for further proceedings in keeping with these conclusions.

It is so ordered.