JON O. NEWMAN, Circuit Judge:
This appeal arises out of the efforts of a trustee in bankruptcy to avoid as preferences certain payments the debtor made to creditors before filing for bankruptcy protection. The District Court for the South *231 ern District of New York (Abraham D. Sofaer, Judge) determined that payments the debtor made to its law firm were voidable preferences and entered judgment against the firm and one of its partners. 34 B.R. 1000. The law firm and the partner appeal from this judgment, arguing that the District Court erred in rejecting their “running account” defense to preference liability. We affirm.
I.
For several years prior to 1977, the law firm of Lefrak Fischer Myerson & Mandell (“Lefrak Fischer”) was outside counsel to Frigitemp Corporation (“Frigitemp”). In November 1977, Joseph Lefrak, a partner in Lefrak Fischer, was elected to Frigi-temp’s Board of Directors. In early 1978, Lefrak, a certified public accountant as well as an attorney, was elected to the Board’s Audit Committee. In late 1977 and early 1978, he attended numerous meetings with Frigitemp’s bankers to discuss the corporation’s defaults on various loans. Lefrak also consulted a New York law firm specializing in debtor and creditor law for help in negotiating with Frigitemp’s banks.[1] In March 1978, Frigitemp made payments totalling $52,825.00 to Lefrak Fischer. The parties stipulated at trial that those payments were made on a “running account.” Thereafter, on March 20, 1978, Frigitemp filed for relief under the Bankruptcy Act of 1898.
Frigitemp’s trustee brought an action, asserting that section 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1976), permitted him to avoid as preferences the payments made to Lefrak Fischer. Section 60(a)(1) defines a preference as a transfer of the debtor’s property on account of an antecedent debt (a) that is made while the debtor is insolvent and within four months before bankruptcy and (b) that gives a creditor a greater percentage of its debt than other creditors of the same class. Id. § 96(a)(1). Section 60(b) permits the trustee to avoid a preference if the creditor receiving the payment had “reasonable cause to believe that the debtor [was] insolvent” at the time of the payment. Id. § 96(b).
The District Court found that Frigitemp was insolvent throughout the four-month preference period and that all the other elements of section 60(a)(1) were satisfied. Turning to section 60(b), the District Court considered whether or not Lefrak and his firm had reasonable cause to believe that Frigitemp was insolvent at the time of the March payments. Because of “Mr. Lef-rak’s legal and financial sophistication and his close involvement in Frigitemp’s affairs,” the District Court determined that “he had constructive if not actual knowledge of Frigitemp’s insolvency at the time the March transfers were made.” Therefore, the District Court held that the payments “are voided as preferential” and entered judgment against Lefrak and Lefrak Fischer in the amount of $52,825.00. In a later proceeding, the District Court reduced the amount of this judgment to $46,071.25 under the “subsequent advance” rule of section 60(c).[2]
On appeal, Lefrak and Lefrak Fischer do not quarrel with the District Court’s finding that the March payments satisfy the statutory definition of a “preference.” Nor do they challenge the determination that they had reasonable cause to believe that Frigitemp was insolvent at the time those payments were made. They argue nonetheless that they are protected from preference liability by the so-called “running account” rule. The history of the running account rule convinces us that it is no longer a valid defense.
*232 II.
The running account rule developed as a judicial response to the rigor of a preference provision as it existed in the bankruptcy statute prior to 1903. To provide a weapon against preferences in addition to the trustee’s authority to avoid them under section 60(b), section 57(g) provided that the claim of a creditor who had received a preference would not be allowed unless the creditor surrendered the preference. Prior to 1903, section 60(a) defined a preference as a transfer of the debtor’s property made while the debtor was insolvent where the effect of the transfer was to permit a creditor “to obtain a greater percentage of his debt than ... other ... creditors of the same class.” Section 60(b) permitted the trustee to avoid a preference if it had been made within four months of bankruptcy and if the creditor had reasonable cause to believe that a preference was intended. Section 57(g), however, did not contain either the four-month timing requirement or the scienter requirement. A creditor seeking allowance of a claim was' therefore obliged to surrender a payment that qualified as a preference under section 60(a), regardless of when the preference was given or whether he then had notice of the debtor’s insolvency.
In Pirie v. Chicago Title and Trust Co., 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171 (1901), the Supreme Court refused to read the section 60(b) scienter requirement into the section 60(a) definition of preference, a result that also would have imposed a scienter requirement on the remedy of section 57(g). In Pirie, a creditor sold goods worth $4,403.77 to the debtor. Id. at 440, 21 S.Ct. at 907. Prior to adjudication in bankruptcy, the debtor paid $1,336.79 to the creditor, leaving a balance due of $3,093.98. Id. The creditor attempted to assert a claim for that balance in the bankruptcy proceeding. The Supreme Court held that the earlier payment of $1,336.79 was a preference within the meaning of section 60(a) and that, therefore, section 57(g) required the creditor to surrender that amount to the trustee “as a condition of proving the balance of the debt or other claims of the creditor,” id. at 443, 21 S.Ct. at 908, even though, at the time of the payment, the creditor had no notice of insolvency and no reasonable cause to believe that it was being preferred, id. at 440, 21 S.Ct. at 907.
Following Pirie, several courts of appeals, indicating their concern over the “gross injustice” that a “literal” application of section 57(g) would produce in some cases, refused to apply the provision where the alleged preference was a payment made on a running account to a creditor who had no notice of insolvency. In re Dickson, 111 Fed. 726, 727-28 (1st Cir.1901); see Gans v. Ellison, 114 Fed. 734 (3d Cir.1902); see also Kimball v. E.A. Rosenham Co., 114 Fed. 85 (8th Cir.1902). The courts found the facts of Pirie to be distinguishable from the facts confronting them. Whereas the payment in issue in Pirie reduced the amount the debtor owed to the creditor and thus represented a gain to the creditor, the payments in these cases did not represent an ultimate gain because they were followed by further sales, which “increased the net indebtedness to the creditor, and correspondingly increased the bankrupt’s estate.” In re Dickson, supra, 111 Fed. at 728; see Gans v. Ellison, supra, 114 Fed. at 734-35, 737; Kimball v. E.A. Rosenham Co., supra, 114 Fed. at 87. Since the creditors had not gained from their course of dealings with the debtor, they were deemed not to have received preferences within the meaning of section 60(a), and, therefore, section 57(g) did not bar their claims against the estate. See Gans v. Ellison, supra, 114 Fed. at 737; Kimball v. E.A. Rosenham Co., supra, 114 Fed. at 87, 88-89; In re Dickson, supra, 111 Fed. at 728-29.
The Supreme Court accepted the running account defense when it next considered the applicability of section 57(g) to a creditor who, without notice of insolvency, had received a technical preference. Jaquith v. Alden, 189 U.S. 78, 23 S.Ct. 649, 47 L.Ed. 717 (1903). This time the Court held that “payments on a running account, where new sales succeed payments' and the net *233 result is to increase the value of the estate, do not constitute preferential transfers under section 60a.” Id. at 83, 23 S.Ct. at 651. In two later cases decided under the pre-1903 version of the Bankruptcy Act, the Supreme Court upheld the running account rule as a defense to section 57(g) where the creditor, without notice of insolvency, took a technical preference. See Joseph Wild & Co. v. Provident Life and Trust Co., 214 U.S. 292, 29 S.Ct. 619, 53 L.Ed. 1003 (1909); Yaple v. Dahl-Millikan Grocery Co., 193 U.S. 526, 24 S.Ct. 552, 48 L.Ed. 776 (1904). In Joseph Wild & Co., supra, the Court explained that the rule of Jaquith v. Alden, supra, rested upon the “principle that all the dealings between the creditor and the bankrupt were after the bankrupt’s insolvency, and that their net effect was to enrich the bankrupt’s estate by the total sales, less the total payments.” 214 U.S. at 297, 29 S.Ct. at 619. Payments made to a creditor “under such circumstances did not constitute preferences which the creditor was bound to surrender before proving his claim in bankruptcy.” Id.
In 1903, Congress amended sections 57(g), 60(a), and 60(b). Act of Feb. 5, 1903, ch. 487, §§ 12, 13, 32 Stat. 799-800. The four-month time period, which had previously been in section 60(b), where it limited the trustee’s authority to avoid preferences, was moved to section 60(a), where it became part of the definition of a preference. More significantly, section 57(g) was amended to provide that the preferences that a creditor must surrender in order to have its claims allowed were only those preferences voidable under section 60(b). By making section 57(g) consistent with section 60(b), Congress ensured that a creditor who had been “innocently” preferred would not be required to surrender the preference as a condition to assertion of its claim against the estate.
The 1903 amendment of section 57(g) raised the issue on which this appeal turns: Does the running account defense, which was judicially created to ease the rigor of the pre-1903 version of section 57(g), survive the amendment of that provision? In the appellants’ view, the defense survived the 1903 amendment because the defense was created to meet two concerns — protecting the innocent creditor and encouraging transactions that enriched the estate and only the first concern was allayed by the amendment. They argue that, while the 1903 amendment made the defense unnecessary to protect innocent creditors who receive payments without knowledge of the debtor’s insolvency, the defense should survive to protect all creditors who receive payments on running accounts that in the aggregate do not deplete the estate. They claim that their transactions with Frigi-temp enriched the estate[3] and that, therefore, they should not be asked to reimburse the trustee for the March payments even though they knew that Frigitemp was insolvent throughout the preference period.
Every court that has squarely considered the appellants’ argument has rejected it and has ruled that the defense “disappeared” in 1903. In re Ira Haupt & Co., 304 F.Supp. 917, 945 (S.D.N.Y.1969); see Cooper Petroleum Co. v. Hart, 379 F.2d 777, 781 (5th Cir.1967) (running account rule “is simply inapplicable” where “creditor accepting payments on open account is found to have had reason to believe the debtor to be insolvent”). In Campanella v. Liebowitz, 103 F.2d 252 (3d Cir.1939), the court examined the development of the defense, concluding that it was designed to prevent “definite hardship [to] creditors who, in good faith and without knowledge of the debtor’s insolvency, had received technical preferences.” Id. at 253. With the 1903 amendment, Congress also “recognized the necessity of affording at least some protection to creditors who in good faith had received a payment of a debt” within the preference period. Id. The defense did not survive the amendment because the Supreme Court did not intend to immunize from preference liability “creditors on running accounts who had reason *234 able cause to believe that they were being preferred at the time the payments were made.” Id.; see In re Thomas W. Garland, Inc., 19 B.R. 920 (Bankr.E.D.Mo.1982) (1903 amendment eliminated “theoretical foundation” for running account rule); 3, Part 2 Collier on Bankruptcy H 60.23 (14th ed. 1977) (running account defense “depended more on the creditor’s belief in the debtor’s solvency than it did on any rationalization as to enrichment of the debtor’s estate”).
We are not persuaded to break with this line of authority. While the early cases announcing and applying the running account rule have been aptly called “confusing,” id.; see In re Fred Stem & Co., 54 F.2d 478, 481 (2d Cir.1931) (L. Hand, J, concurring), what is clear is that virtually all of them mention and appear to rely upon the creditor’s lack of notice of insolvency, see, e.g., Joseph Wild & Co. v. Provident Life and Trust Co., supra, 214 U.S. at 296, 29 S.Ct. at 619; Yaple v. Dahl-Millikan Grocery Co., supra, 193 U.S. at 527, 24 S.Ct. at 553; Jaquith v. Alden, supra, 189 U.S. at 80, 23 S.Ct. at 649; In re Sagor, 121 Fed. 658 (2d Cir.1903); Gans v. Ellison, supra, 114 Fed. at 734-35; Kimball v. E.A. Rosenham Co., supra, 114 Fed. at 87; In re Dickson, supra, 111 Fed. at 727, 728. No recent opinion has unequivocally approved the defense.[4] Because we agree with the determination of the District Court that the running account defense was no longer available after 1903, the defense may not be relied upon by the appellants in this case.
We recognize that, as appellants point out, the lack of a running account defense creates a trilemma for suppliers of goods and services to insolvent customers during the preference period. Such suppliers must either demand cash, decline to serve the customer, or supply goods or services on credit, thereby creating an antecedent debt, the payment of which will likely be a preference. That will sometimes be an unpleasant choice, especially for a law firm with a long-standing relationship with a client. Moreover, a consequence of this choice in some instances will be a denial of needed goods or services, at least until the insolvent customer secures the protection of the bankruptcy court. However, Congress has determined that the existing scheme for avoiding preferences and enabling an insolvent debtor to continue in business under the supervision of the bankruptcy court is the appropriate way to reconcile the competing interests. We are not disposed to modify that scheme by perpetuating the running account defense after the 1903 amendments, particularly after Congress had a full opportunity to legislate on the subject in the course of the thorough revision that produced the current Bankruptcy Code.
The judgment of the District Court is affirmed.

. Frigitemp ultimately retained this firm to assist it in filing for bankruptcy relief.

. Section 60(c) permits a creditor who receives a voidable preference and who thereafter "gives the debtor further credit without security of any kind for property which becomes a part of the ... estate” to deduct the "amount of such new credit remaining unpaid” from the amount of the preference. 11 U.S.C. § 96(c) (1976). As the District Court pointed out, the existence of section 60(c) should reduce the appellants’ concern "that creditors who knowingly extend credit to an insolvent business must bear the entire burden of their generosity.”

. Apparently, the amount of money owed by Frigitemp to Lefrak Fischer at the end of the preference period was greater than the amount owed at the beginning of that period.

. While two cases lend some credence to the appellants’ enrichment theory, neither case holds that the running account defense is valid. In Farmers Bank v. Julian, 383 F.2d 314 (8th Cir.), cert. denied, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967), after acknowledging that the case did not involve a running account, the court discussed the running account rule as an equitable principle recognized under the Bankruptcy Act. However, the court expressly found that the trustee had failed to carry his burden of proving that the creditor was on notice of insolvency. Id. at 327. Therefore, it was unnecessary for the court to rely on the running account rule in order to hold that the payments in issue were not voidable preferences. In re Stewart, 233 F.Supp. 89 (D.Or.1964), did not involve a running account, but an agreement by which the debtor was effectively required to pay for the goods before delivery. Id. at 92. After stating that it would "incline toward” adoption of the running account rule, the court demonstrated its fundamental misunderstanding of the development of the rule by stating that it did not understand how an amendment to section 57(g) could affect analysis under sections 60(a) and 60(b) or change the rule announced in Yaple. Id. at 92-93.